JAMES O'BRIEN, late Sheriff, etc., Respondent, v. JOHN N. YOUNG et al., Appellants.

Upon a judgment rendered prior to the passage of the act reducing the rate of interest to six per cent (Chap. 538, Laws of 1879), the judgment creditor is entitled to interest at the old rate, seven per cent, up to January 1, 1880, when that act went into effect, but only at the reduced rate, six per cent, thereafter. (MILLER and DANFORTH, JJ., dissenting.)

A judgment is not a "contract or obligation" within the exception in said act. (MILLER and DANFORTH, JJ., dissenting.)

It seems, that those words apply only to contracts or obligations resting upon the voluntary mutual agreement of the parties. (MILLER and DANFORTH, JJ., dissenting.)

A judgment is an obligation of record, and interest thereon is given, not on the principle of implied contract, but as damages for delay in performing the obligation, the measure of which is the statutory rate.

(Submitted March 11, 1884 ; decided April 15, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made January 8, 1884, which affirmed an order of Special Term, restraining the sheriff of the county of New York from collecting, upon a judgment issued to him herein, interest at a greater rate than six per cent after January 1, 1880.

Judgment was perfected in this action in favor of plaintiff and against defendants February 10, 1877. Execution thereon was issued to the sheriff November 19, 1883, instructing the sheriff to collect the amount thereof with interest at the rate of seven per cent from the date of the entry of judgment.

*Lawrence & Waehner* for appellants.

*Lucien Birdseye* for respondent. The provisions of the statute touching the judgment in question were, by law, as much a part of the express provisions and conditions of the judgment as the express words adjudging to the plaintiff his damages and costs. (*U. S.* v. *Price*, 9 How. [U. S.] 83, 91 ; *Randall* v. *Sackett*, 77 N. Y. 482.) There was attached

to the judgment immediately upon its entry, and became a part of it, the vested and absolute right to recover and collect interest thereon at the rate of seven per cent per annum. (*Bailey* v. *Mayor, etc.,* 7 Hill, 146; *Cooper* v. *North,* 1 How. Pr. 59; *Bull* v. *Ketchum,* 2 Denio, 188; 1 R. S. 771*, § 1.) The judgment in question is a "contract" within the exception of the act of June 20, 1879. (3 Black. Com. 117, 160; 1 Chit. Pl. 111, 126, 142; 1 Paine & Duer's Pr. 3, 10; 1 Burr. Pr. 22, 24; *Crawford* v. *Whittal,* 1 Doug. 4; *Walker* v. *Witter,* id. 1.) The judgment in question being an interest-bearing "obligation" and "contract," made before the passage of chapter 538 of the Laws of 1879, it was saved from the operation of the enacting clause by the excepting clause and by the paramount law. (Const. of the U. S., art. 1, § 10; *Man* v. *Eckford,* 15 Wend. 502, 519; *Burch* v. *Newbury,* 10 N. Y. 302.) The supposed rule that the rate of interest fixed by statute governs as to damages on contracts not of record has not been applied to judgments, or to any contract by statute of record. (*N. R. Meadow Co.* v. *Shrewsbury Church,* 22 N. J. L. 424, 429; *Verree* v. *Hughes,* 6 Halst. [N. J.] 91; *Wilson* v. *Marsh,* 2 Beas. 289; *Cox* v. *Marlott,* 7 Vroom, 389, 390; *Mason* v. *Coke,* Breese, 52; *Wilson* v. *Cobb,* 31 N. J. Eq. 91; *Eastin* v. *Van Dorn,* Walk. [Miss.] 214; *Mower* v. *Kip,* 2 Edw. Ch. 165; 6 Paige, 88; *Mayor, etc., of Macon* v. *Trustees B. Co. Academy,* 7 Ga. 204; *Allen* v. *Adams,* 15 Vt. 16; *Mann* v. *Taylor,* 1 McCord's L. R. 171; *Ex parte Mann,* id. 589; *Troxwell* v. *Hugate,* Hardin [Ky.], 2; *Russell* v. *Shepard,* id. 44; *Taul* v. *Moore,* id. 94; *Beatty* v. *Smith,* 2 H. & M. 395; *Scott* v. *Trents,* 4 id. 358.)

Earl, J. By the decided weight of authority in this State, where one contracts to pay a principal sum at a certain future time with interest, the interest prior to the maturity of the contract is payable by virtue of the contract, and thereafter as damages for the breach of the contract. (*Macomber* v. *Dunham,* 8 Wend. 550; *United States Bank* v. *Chapin,* 9 id. 471; *Hamilton* v. *Van Rensselaer,* 43 N. Y. 244; *Ritter* v. *Phillips,*

53 id. 586; *Southern Central R. R. Co.* v. *Town of Moravia*, 61 Barb. 180.) And such is the rule as laid down by the Federal Supreme Court. (*Brewster* v. *Wakefield*, 22 How. [U. S.] 118; *Burnhisel* v. *Firman*, 22 Wall. 170; *Holden* v. *Trust Co.*, 100 U. S. 72.) The same authorities show that after the maturity of such a contract, the interest is to be computed as damages according to the rate prescribed by the law, and not according to that prescribed in the contract if that be more or less.

But when the contract provides that the interest shall be at a specified rate until the principal shall be paid, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment. And where one contracts to pay money on demand "with interest," or to pay money generally "with interest," without specifying time of payment, the statutory rate then existing becomes the contract rate and must govern until payment, or at least until demand and actual default, as the parties must have so intended. (*Paine* v. *Caswell*, 68 Me. 80; 28 Am. Rep. 21; *Eaton* v. *Boissonnault*, 67 Me. 540; 24 Am. Rep. 52.)

If, therefore, this judgment, the amount of which is by its terms payable with interest, is to be treated as a contract — as a bond executed by the defendants at its date, then the statutory rate of interest existing at the date of the rendition of the judgment is to be treated as part of the contract and must be paid by the defendants according to the terms of the contract, and thus the plaintiff's contention is well founded.

But is a judgment, properly speaking, for the purposes now in hand, a contract? I think not. The most important elements of a contract are wanting. There is no *aggregatio mentium*. The defendant has not voluntarily assented. All the authorities assert that the existence of parties legally capable of contracting is essential to every contract, and yet they nearly all agree that judgments entered against lunatics and others incapable in law of contracting are conclusively binding until vacated or reversed. In *Wyman* v. *Mitchell* (1 Cowen, 316), SUTHERLAND, J., said that "a judgment is in no sense a contract or agreement between the parties." In *McCoun* v. *The*

*New York Central and Hudson River Railroad Company*
(50 N. Y. 176), Allen, J., said that " a statute liability wants
all the elements of a contract, consideration and mutuality as ·
well as the assent of the party.    Even a judgment founded
upon contract is no contract."    In *Bidleson* v. *Whytel* (3
Burrows, 1545–1548), it was held after great deliberation and
after consultation with all the judges, Lord Mansfield speak-
ing for the court, "that a judgment is no contract, nor can be
considered in the light of a contract, for *judicium redditur in
invitum.*"    To the same effect are the following authorities:
(*Rae* v. *Hulbert,* 17 Ill. 572; *Todd* v. *Crumb,* 5 McLean, 172;
*Smith* v. *Harrison,* 33 Ala. 706; *Masterson* v. *Gibson,* 56 id.
56; *Keith* v. *Estill,* 9 Port. 669; *Larrabee* v. *Baldwin,* 35 Cal.
156; *In re Kennedy,* 2 S. C. [N. S.] 226; *State of Louisiana*
v. *City of New Orleans,* 109 U. S. Sup. Ct. 285.)

But in some decided cases, and in text-books, judges and
jurists have frequently, and, as I think, without strict accuracy,
spoken of judgments as contracts.    They have been classified
as contracts with reference to the remedies upon them.    In
the division of actions into actions *ex contractu* and *ex delicto,*
actions upon judgments have been assigned to the former class.
It has been said that the law of contracts, in its widest extent,
may be regarded as including nearly all the law which regulates
the relations of human life; that contract is co-ordinate and
commensurate with duty; that whatever it is the duty of one
to do he may be deemed in law to have contracted to do, and
that the law presumes that every man undertakes to perform
what reason and justice dictate he should perform.    (1 Pars.
on Cont. [6th ed.] 3; 2 Black. Com. 443; 3 id. 160; *McCoun*
v. *N. Y. C. & H. R. R. R. Co., supra.*)    Contracts in this
wide sense are said to spring from the relations of men to each
other and to the society of which they are members.    Black-
stone says: "It is a part of the original contract entered into
by all mankind who partake the benefits of society, to submit
in all points to the municipal constitutions and local ordinances
of that state of which each individual is a member."    In the
wide sense thus spoken of the contracts are mere fictions in-

vented mainly for the purpose of giving and regulating remedies. A man ought to pay for services which he accepts, and hence the law implies a promise that he will pay for them. A man ought to support his helpless children, and hence the law implies a promise that he will do so. So one ought to pay a judgment rendered against him, or a penalty which he has by his misconduct incurred, and hence the law implies a promise that he will pay. There is no more contract to pay the judgment than there is to pay the penalty. He has neither promised to pay the one nor the other. The promise is a mere fiction, and is implied merely for the purpose of the remedy. Judgments and penalties are, in the books, in some respects, placed upon the same footing. At common law both could be sued for in an action *ex contractu* for debt, the action being based upon the implied promise to pay. But no one will contend that a penalty is a contract, or that one is really under a contract liability to pay it. (*McCoun* v. *N. Y. C. & H. R. R. R. Co., supra.*)

Suppose a statute gives a penalty to an aggrieved party, with interest, what interest could he recover? The interest allowed by law when the penalty accrued, if the statutory rate has since been altered? Clearly not. He would be entitled to the interest prescribed by law during the time of the defendant's default in payment. There would, in such a case, be no contract to pay interest, and the statutory rate of interest at the time the penalty accrued would become part of no contract. If, therefore, a subsequent law should change the rate of interest, no vested right would be interfered with, and no contract obligation would be impaired.

The same principles apply to all implied contracts. When one makes a valid agreement to pay interest at any stipulated rate for any time, he is bound to pay it, and no legislative enactment can release him from his obligation. But in all cases where the obligation to pay interest is one merely implied by the law or is imposed by law, and there is no contract to pay except the fictitious one which the law implies, then the rate of interest must at all times be the statutory rate.

The rate existing at the time the obligation accrued did not become part of any contract, and hence the law which created the obligation could change or alter it for the future without taking away a vested right or impairing a contract.

In the case of all matured contracts which contain no provision for interest after they are past due, as I have before said, interest is allowed, not by virtue of the contract, but as damages for the breach thereof. In such cases what would be the effect of a statute declaring that no interest should be recovered? As to the interest which had accrued as damages before the date of the law, the law could have no effect because that had become a vested right of property which could not be taken away. But the law could have effect as to the subsequent interest, and in stopping that from running would impair no contract. A law could be passed providing that in all cases of unliquidated claims which now draw no interest, interest should thereafter be allowed as damages; and thus there is ample legislative power in such cases to regulate the future rate of interest without invading any constitutional right. When a man's obligation to pay interest is simply that which the law implies, he discharges that obligation by paying what the law exacts.

This judgment, so far as pertains to the question we are now considering, can have no other or greater force than if a valid statute had been enacted requiring the defendant to pay the same sum with interest. Under such a statute, interest would be computed, not at the rate in force when the statute was enacted, but according to the rate in force during the time of default in payment. A different rule would apply if a judgment or statute should require the payment of a given sum with interest at a specified rate. Then interest at the rate specified would form part of the obligation to be discharged.

Here, then, the defendant did not in fact contract or promise to pay this judgment, or the interest thereon. The law made it his duty to pay the interest, and implied a promise that he would pay it. That duty is discharged by paying such interest

as the law, during the time of default in paying the principal sum, prescribed as the legal rate.

If this judgment had been rendered at the date the execution was issued, interest would have been computed upon the original demand at seven per cent to January 1, 1880, and then at the rate of six per cent. Shall the plaintiff have a better position because the judgment was rendered prior to 1880?

As no intention can be imputed to the parties in reference to the clause in the judgment requiring payment "with interest" we may inquire what intention the court had. It is plain that it could have had no other intention than that the judgment should draw the statutory interest until payment. It cannot be presumed that the court intended that the interest should be at the rate of seven per cent if the statutory rate should become less.

That there is no contract obligation to pay the interest upon judgments which is beyond legislative interference is shown by legislation in this country and in England. Laws have been passed providing that all judgments should draw interest, and changing the rate of interest upon judgments, and such laws have been applied to judgments existing at their date, and yet it was never supposed that such laws impaired the obligation of contracts.

It is claimed that the provision in section 1 of the act of 1879, which reduced the rate of interest (Chap. 538), saves this judgment from the operation of that act. The provision is that "nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this act." The answer to this claim is that here there was no contract to pay interest at any given rate. The plied contract, as I have shown, was to pay such interes law prescribed, and that contract is not affected or inte with.

The foregoing was written as my opinion in the case *Prouty* v. *Lake Shore and Michigan Southern Railway Company.* The only difference between that case and this

is that there the judgment was by its terms payable "with interest." Here the judgment contains no direction as to interest. The reasoning of the opinion is applicable to this case and is, therefore, read to justify my vote in this. Since writing the opinion, we have decided in the case of *Sanders* v. *Lake Shore and Michigan Southern Railway Co.*,* the law to be as laid down in the first paragraph of the opinion.

The orders of the General and Special Terms should be reversed and the motion granted, without costs in either court, the parties having so stipulated.

ANDREWS, J. *First.* The exception in the act of 1879, "nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this act," applies only to contracts or obligations resting upon the mutual agreement of parties. A judgment is not a contract or obligation *made* between the parties, and only such contracts or obligations are within the exception. (*Salter's Case*, 86 N. Y. 401.)

*Second.* Interest *post diem* on a contract for the payment of money is given, not on the principle of implied contract, but as damages for breach of contract. Interest on a judgment, which is an obligation of record to pay the sum adjudged, is given as damages for delay in performing the obligation.

*Third.* In both cases the measure of damages is the statutory rate. This rule does not rest on the basis of contract, but upon the ground that the creditor has lost by the detention of the debt or obligation the use of the money represented thereby, and the law measures the loss by the statutory interest, upon the assumption that the value of the use of the money to the creditor, if the money had been paid when due, would equal the interest.

*Fourth.* It would seem to follow in applying the principle upon which interest *post diem* is given, that if the rate of

interest is changed during the default, the damages increase or diminish *pari passu* in the absence of any exception in the statute.   The rule of damages does not change, but simply the computation.

*Fifth.*  The cases which hold that a note payable with interest, but specifying no time, draws interest until default or payment at the statutory rate existing when the note was made, proceed upon an interpretation of the contract.   They do not govern the case of a judgment, as right to interest on a judgment is given by law, and not by the agreement of the parties.

I therefore concur in the conclusion reached in the opinion of EARL, J.

DANFORTH, J. (dissenting).   Judgment upon contract was entered in favor of the plaintiff, on the 10th of February, 1877, for the sum of $2,994.64.   On the 19th of November, 1883, execution was issued for its enforcement with directions to collect the whole amount, with interest at seven per cent.   The defendants applied by motion to the Special Term of the Supreme Court for an order restraining the sheriff from collecting interest at a greater rate than six per cent per annum after January 1, 1880.   It was refused and the decision then made was affirmed by the General Term of that court.

It is not denied by the appellant that the order appealed from was properly made, if the act of 1879, relating to "the interest of money" (Laws of 1879, chap. 538), is to regulate the computation of interest upon the judgment, and whether it does so or not is the only question before us.

The statute (*supra*) was passed on the 20th day of June, 1879, to take effect on the 1st of January, 1880, except as to contracts or obligations made before its passage.   These are declared to be exempt from its operation, and must consequently be governed by 1 R. S. 771, § 1, which continued the rate of interest at seven per cent.   It is well settled that a judgment merges or extinguishes the right of action which before existed, and itself becomes a debt or contract of record for the

payment of a sum of money adjudged to be due from the debtor to his adversary, or the person to whom it is awarded. (1 Black. Com. by Chitty, 455 ; *In re European Central R. Co.*, L. R., 4 Ch. Div. 33 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 ; *Pease* v. *Howard*, 14 id. 479 ; *Andrews* v. *Montgomery*, 19 id. 162 ; *Sayre* v. *Austin*, 3 Wend. 496 ; *Taylor* v. *Root*, 4 Abb. Ct. App. Dec. 382.) It is so styled in the statutes (1 R. S., vol. 2, p. 87, § 27), where the representative of a deceased person is required to pay " the debts " of the deceased, and among other debts, " judgments," according to their priority (id. 359, § 7) ; or if recovered after the death of the debtor, while it does not bind the real estate which he had at that time is still to be considered as " a debt" of a superior nature and to be paid in the usual course of administration. So it is styled a "demand" which may be set off (id. 354, § 18) ; and in the statute of limitations is classed among " contracts, obligations or liabilities" (id. 295, §§ 90, 91). We speak of a judgment debt, a judgment debtor and a judgment creditor. Its entry of record not only determines the relations of one party to the other, but fixes the rights and obligations of both. At common law it bore no interest (*Creuze* v. *Hunter*, 2 Ves. Jr. 162), but interest might be recovered in an action of debt brought upon the judgment (id, 167). These cases are cited by KENT, Ch. J., in *Watson* v. *Fuller* (6 Johns. 283), in setting aside an execution by which the plaintiff undertook to collect interest upon a judgment, saying, " The execution must follow the judgment, and can only be commensurate with it." This was in 1810.

In 1813 it was provided (1 R. L. 506, 556), that in all executions on judgments thereafter to be recovered upon contract, it should be lawful to direct the collection of interest from the time of recovery, until paid, and it was held in *Sayre* v. *Austin* (*supra*, Jan., 1830), that a judgment was a debt due " in every possible sense of the term." " A debt," say the court, " due with interest from the time of its rendition, which since the statute, may be collected upon the execution, and before the statute could have been recovered by action

of debt upon the judgment," treating it as a demand in the nature of specialty. By the Revised Statutes (vol. 2, p. 364, § 9), the law above referred to was extended so as to apply not only to judgments upon contract, but to judgments upon " any prior judgment," and it was made lawful to direct, upon such execution, " the collection of interest on the amount recovered from the time of recovering the same until such amount be paid." It is plain that it was not by virtue of these statutes that a judgment carried interest, but because it was debt, and COWEN, J., says in *Klock* v. *Robinson* (22 Wend. 160), that the legislature included a judgment for the reason that a judgment " is, for the purpose of interest, equivalent to a contract." Afterward, however, an absolute right thereto was given by statute, and a new suit for its recovery rendered unnecessary. (Laws of 1844, chap. 324, § 1.) " Every judgment," it says, " shall bear interest from the time of perfecting the same," and this was substantially re-enacted in 1877. (Code, § 1211.) No rate is specified, and therefore the general statute regulating interest in force at the time of its recovery, does, by operation of law, enter into and form part of the obligation, and has the same force as if directly referred to. In *Rensselaer Glass Factory* v. *Reid* (5 Cowen, 587), the right to recover interest when an account has been liquidated by both parties, and when a demand is liquidated by a judgment, is said to be founded upon the same principle, viz.: that there is an implied contract to pay.

The course of English legislation and decision is not unlike our own. By 1 and 2 Vict., chap. 100, § 17, it is enacted that every judgment shall carry interest at the rate of four pounds per centum per annum until satisfied. In *European Central R. Co.* (*supra*), judgment had been obtained upon a railway debenture bearing six per cent interest, and the plaintiff claimed a right to that rate after judgment, but the court held otherwise, upon the ground that, after the recovery of judgment, it became the sole debt between the parties, saying, " the original debt is gone *transit in rem judicatum*, and a fresh debt is created with different consequences," and there is no other debt

or obligation affecting them.   It seems plain then, upon prin-
ciple and authority, that the obligation of the judgment in-
cludes the payment of interest as well as principal, and as it
was in being before, and at the time the act of 1879 took effect,
it is by its very terms excluded from the operation of that act.

A note, by its terms declared to bear interest until paid, but
naming no day of payment, although made before the statute
referred to, would, if paid after its passage, entitle the holder
to the rate of interest prescribed by the statute in force when
the note was made.   Such would be the effect of the contract.
If day of payment was named, and it fell due on and after the
passage of the act, it would bear interest until that time accord-
ing to the statute in force when made.   Up to that time it was
part of the debt (*Keene* v. *Keene*, 3 C. B. [N. S.] 144), and
after maturity it is given as damages, and according to the
statute then in force ; for at that time, the law interferes not
only to allow, but to regulate the rate of interest, on account of
a detention beyond the term of the contract.   In the last case,
therefore, interest would run by operation of law, after
maturity, and by contract up to that time.   Now a judg-
ment is like the note first supposed.   It bears interest until
paid, by force of the contract which the law implied into it at
the time it was recovered.   It then became a contract with no
time of payment specified, but beginning to bear interest, and
by the implied agreement to continue to bear it until paid.

In *Miller* v. *Burroughs* (4 Johns. Ch. 436) the bond ex-
pressed six per cent per annum as the rate of interest, but the
plaintiff claimed seven per cent, the statute rate, after pay-day
had passed.   The court decreed interest at six per cent, saying :
" The contract must control until it ceases to operate by being
merged in the decree."   The condition of the bond is not set
out, and it may be inferred from the remark of the court that
the agreement extended until the money should be paid.   If
so, it would resemble the bond considered by us recently in
*Taylor* v. *Wing* (84 N. Y. 471), where it was stipulated in
plaintiff's mortgage (made prior to 1879) that the principal
sum should bear interest at seven per cent until paid.   It was

admitted that there was no error — notwithstanding the statute of 1879 (*supra*) subsequently passed — in allowing the plaintiff interest at seven per cent until the date of the decision of the case.    But after entry of the judgment, then by virtue of the judgment in which the mortgages were merged.

In *Paine* v. *Caswell* (68 Me. 80; 28 Am. Rep. 21), a note, similar to one I have above supposed, came before the court; it read: " For value received, we promise to pay John S. Paine, or order, $500 and interest at ten per cent."    The question was for how long a period was that rate of interest to be paid.    It was held *first*, that a note payable at a time certain, with interest exceeding six per cent (the legal rate), would draw the stipulated rate till the time specified for payment, and no longer, for the bargain for interest extended only to that time, and after that the statutory rate, allowed by way of damages; *second*, that it would be otherwise where the note stipulated for the extra rate, after as well as when it became due, or until paid; *third*, that upon the contract in question, interest should be reckoned up to the date of judgment to be recovered upon the note.    It was held that the substance of the contract was that the maker would pay the stipulated rate of interest so long as the note might run.    So it is with a judgment and the statute which takes the place of the contract.

In *Klock* v. *Robinson* (*supra*), Judge COWEN examined the question with his accustomed care and fullness of research, and quotes with approval the saying of the court in *Prince* v. *Lamb* (Breese, 299) that " the judgment is a debt, and may be assimilated to a contract to pay a sum certain with interest. Such interest is recoverable as a part of the contract, in the present case, by way of damages for the detention of the debt, the interest being a part of the judgment."

It would seem to follow that the judgment in the case before us was a contract of debt — an obligation bearing interest until paid, and by necessary implication at the rate fixed by law at the time it was entered, and by the very terms of the statute (Laws of 1879, *supra*) to be unaffected by its provisions.    Suppose the statutes permitting interest to be col-

lected upon the execution had not been passed, and the plaintiff had after 1879 sued over the judgment in this case ; can there be any doubt that he would have recovered interest at the rate prescribed when the cause of action — that is, the judgment or debt of record — accrued ? It would then be like the case of *Taylor* v. *Winj*, bearing interest until paid, and so entitled to bear the rate legal when the contract was made until it passed into a new judgment. The measure of interest cannot be affected by the mode of securing it. If this were otherwise, the provisions of the act of 1879 would be of no force in this case ; they would come within the prohibition of the Constitution, as " a law impairing the obligation of contracts " (Const. U. S., § 10, art. 1 ; *Roberts' Adm'r* v. *Cocke, etc.,* 28 Gratt. 207 ; Story on Const., § 138), for " an obligation is impaired when it is made worse for either party thereto." (*Randall* v. *Sackett,* 77 N. Y. 482.) The judgment, like any other contract or obligation, is thus protected.

The precise question presented by this appeal has been repeatedly considered by the courts of New Jersey, and it is there held that whether the debt is evidenced by judgment or agreement can make no difference, and that the judgment continues to draw interest according to the law existing at the time of the recovery, although in the mean time the rate of interest is changed by statute. (*Cox* v. *Marlatt,* 36 N. J., L. R., 389 ; 13 Am. Rep 454.) And somewhat analogous to this are the decisions of the late Supreme Court in this State, under section 3 of the act of 1844, *supra.* It was there declared lawful for any party who shall have obtained a verdict in his favor to tax interest upon such verdict from the time of obtaining the same to the time of perfecting judgment thereon, and it was held to have no application to a verdict rendered before the passage of the act, although judgment was not entered until after. (*Bailey* v. *Mayor, etc.,* 7 Hill, 146 ; *Bull* v. *Ketchum,* 2 Denio, 188.) *Salter* v. *Utica & Black R. R. R. Co.* (86 N. Y. 401) is not opposed to these views. In that case interest accrued, not under a contract, but as compensation for an injury, the statute

fixing the period of computation, but leaving its estimate to be made at a rate lawful when the principal sum was ascertained.

It has been argued by the appellant that the saving clause of the statute of 1879 (*supra*) relates only to contracts whereby one man binds himself to another, and not such as originate by the act and operation of law independently of their agreement. A distinction of this kind may sometimes be taken as in *People, ex rel. Dusenbury,* v. *Speir* (77 N. Y. 144), where in favor of personal liberty, and in view of all the provisions of the act (Laws of 1831, chap. 300) to " abolish imprisonment for debt and to punish fraudulent debtors," then under examination, it was held that the contract referred to meant one to which the assent of both parties had been in fact given, and not one where such assent was a mere fiction of law; that the first might be the basis of proceedings then in question, and the other not. But however formed, such a contract leads to an obligation, and under a statute which speaks generally of "contracts or obligations made before" a certain time, we are not to ask how any particular obligation was created. There is nothing in the act which calls for such an inquiry. If an obligation exists, it is because it has been made, and whether it was because two persons were of the same mind, or because the law acting upon both bound each to the other, is immaterial. The obligation, whether by contract or *quasi* contract, is the same, and in either case, in applying the statute now before us, we have only to ascertain the time when the obligation was produced. In the cases cited by the appellant to show that a judgment is not a contract, it is conceded to be a *quasi* contract, because, as is said in some of them, and implied in all, " it establishes a legal obligation to pay the amount recovered." Therefore these cases, as well as the ones above referred to as showing that a judgment is to all intents and purposes a contract, agree in this, that a judgment is an obligation. Nothing more is necessary to sustain the respondent's position.

It must be conceded by all that the judgment was an obligation upon which, when entered up, the defendants at once became liable to pay and the plaintiff to demand interest at the

rate of seven per cent. By the laws then in force (1 R. S. 771, § 1; Laws of 1844, chap. 324), this rate was to continue while the principal remained unpaid, and I can find no authority which permits us to so abridge or limit the effect of the saving clause in the act of 1879, as to exclude such an obligation from the operation of those laws. It seems to me better to give that clause of the act of 1879 its full and natural meaning, and so carry out the apparent intention of the legislature by applying it to all contracts and obligations of whatever kind, if created or made before the day of its passage, rather than to those only which were made or formed in a particular way. By the last mode we obtain a construction not only against the letter of the statute, but against its intent so far as the intent can be collected out of the words of the act. It is there declared that nothing therein contained "shall be so construed as to in any way affect any contract or obligation made before" its passage. (Laws of 1879, *supra.*) I can find in these words no ambiguity, therefore no occasion to speculate as to the intention of the legislature in using them, nor can I see how, without adding a new term to the saving clause, we can subject the judgment before us to the operation of the general provisions of the body of the statute. This we are not at liberty to do.

I am in favor, therefore, of affirming the order appealed from.

RUGER, Ch. J., and FINCH, J., concur with EARL and ANDREWS, JJ.; MILLER and DANFORTH, JJ., dissent.

Orders reversed and motion granted.