NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—June, 1887.

MATTER OF RUTHERFORD.

*In the matter of the estate of* OLIVER H. JONES, *de-
ceased.*

The beneficiary of a testamentary trust having executed an instrument
acknowledging the receipt, from the trustees, of all the income of the
trust fund for her benefit, accrued up to a specified date, and releasing
the trustees from all liability except as respected the *corpus* of such
trust fund, afterwards petitioned for an accounting and interposed an
objection to the account filed, setting forth that petitioner had not re-
ceived the income from the beginning of the trust up to the date in
question, nor any account thereof.—

*Held,* that the instrument described furnished the trustees with *prima facie*
evidence of the truth of its admissions, and did not preclude petitioner
from showing that the full amount of income had not in fact come to
her hands.

A trustee who had paid moneys to the beneficiary of the income of a trust
fund, at a time when no income was due, cannot be allowed to reim-
burse himself out of the income of the trust subsequently coming to his
hands.

The provisions of 1 R. S., 730, § 63, which declare the beneficial interest of
a *cestui que trust* in the rents and profits of lands inalienable, are appli-
cable to trusts for the payment of the income of personalty.

A claim, on the part of a testamentary trustee, against a balance of income
of the trust fund in his hands, arising from an alleged indebtedness, to
him, of the beneficiary of such income, is a demand of set-off which
cannot be adjusted in a Surrogate's court.

One of two testamentary trustees who has assented to the act of the other
in borrowing funds of the trust upon the security of a mortgage made
payable with interest, at a rate greater than that subsequently estab-
lished by law, until the principal indebtedness should be discharged,
though liable for the principal, cannot be held for more than legal
interest, in the absence of proof of a personal benefit accruing from
the transaction.

MATTER OF RUTHERFORD.

HEARING of exceptions to report of referee.

DILLAWAY, DAVENPORT & LEEDS, *for cestui que trust.*

SAMUEL JONES, *and* NORTH, WARD & WAGSTAFF, *for trustees.*

THE SURROGATE.—By the will of this testator his executors and trustees, of whom these respondents, Oliver L. Jones and John L. Gardiner, are the sole survivors, were directed to invest the sum of $25,000 out of the assets of his estate, and to apply the income thereof to the use of his daughter, Martha L. Rutherford, during her life.

In November, 1883, Mrs. Rutherford commenced in this court a proceeding for an accounting by her trustees, and for the payment to her of any balance of income found to be her due. In response to the citation in such proceeding, each of the respondents filed a separate account.

In the account of Gardiner, it was set forth that the accounting party had received certain sums as income of the trust estate, and had paid the same to this petitioner; that, on October 20th, 1877, the petitioner had executed a release, whereby she had acknowledged the receipt of all income which had theretofore accrued, and that subsequent to the date of such release no income of the trust estate had come to his hands.

The release was also claimed by the account of trustee Jones to preclude any inquiry into transactions between himself and the petitioner prior to October 27th, 1877. He charged himself with $9,561.04 as interest on the fund from the date last named until November 1st, 1883, and claimed credit for divers

sums amounting in all to $9,571.21, thus showing an overpayment to the *cestui que trust* of $10.17.

To these accounts the petitioner interposed various objections, in one of which she made the allegation following: " There is no release from her to said Jones or said Gardiner which is binding upon her; she denies that she has ever given said Jones or said Gardiner any release with knowledge of the accounts or proceedings of said Jones or his co-trustee, and that whatever release was given was given under compulsion and not freely."

On the day of the filing of these objections, the respondent Gardiner submitted an affidavit, wherein he alleged that " more than six years had elapsed between the execution and the delivery of the instrument in the account herein mentioned " (meaning the release aforesaid), " and the bringing of this proceeding, and all causes of action for setting aside or disturbing said instrument are barred by the Statute of Limitations."

The two accounts and the objections thereto were sent to a reference.  At one of the early hearings before the referee, the petitioner filed this additional objection: " The petitioner has not received the income of this estate from the beginning of the trust up to October 27th, 1877, nor any account thereof." The alleged release was then put in evidence.  It admits that the petitioner had received from these respondents certain personal property to which she was entitled under the testator's will, and all the income of the trust fund for her benefit, and in consideration of the premises, and of the sum of one dollar, it releases

the respondents from all liability except as respects the *corpus* of such trust fund.

After this instrument had been received in evidence the petitioner sought to inquire into the transactions of the respondents from a time prior to its execution, and offered to prove that on the day it was executed it was not true that she had in fact been paid all the income to which she had become entitled. The referee declined to hear any evidence upon this subject, basing his refusal upon the authority of Fraenznick v. Miller (1 *Dem.*, 136) and Woodruff v. Woodruff (3 *Dem.*, 505), and upon the intimation of counsel that the petitioner had applied to the Surrogate for an order directing her trustees to render an account of their transactions prior to the alleged release, and that her application had been denied for lack of jurisdiction to grant it.

The records of this court do not show that such an application was ever formally passed upon, or indeed that it was ever submitted for the Surrogate's action. If it had been so submitted and had been denied, as it might very properly have been denied upon the pleadings as they stood when the reference was ordered, the Surrogate might nevertheless have granted it if he had been appealed to anew, after the interposition of the contestant's additional objection distinctly charging that some portion at least of the income that had accrued prior to October 27th, 1877, had been withheld. I think that the referee should have received the testimony offered by the petitioner and excluded under the mistaken notion that its exclusion was called for by a previous ruling of the

Surrogate (Schmidt v. Heusner, 4 *Dem.*, 275; Reilley v. Duffy, *id.*, 366).

So far as the release in question relates to property of the estate apart from the trust fund involved in the present accounting, this court has nothing to do with it. There were other persons besides the petitioner entitled to share in such property, and, in distributing it among the several parties entitled, the respondents may have acted upon the release in such a way as to estop the petitioner from attacking it. But as regards the income of the trust fund this petitioner alone was concerned, and when she executed a paper acknowledging that she had received all the income that had theretofore accrued, it seems to me that she simply furnished the trustees with *prima facie* evidence that such was the case, and did not preclude herself from showing that the full amount of that income had not in fact come to her hands (Matter of Peyser, 6 *N. Y. Surr. Dec.*, 175). She was entitled to it *all*, and as, in paying over *all*, the trustees would have done no more than their simple duty, the so-called release, so far as it relates to such income, lacks that element of mutuality, which is the essential basis of an estoppel.

The petitioner's exceptions to the referee's refusal to permit an inquiry into transactions prior to the release would therefore be sustained, and the proceeding remitted to the referee for the introduction of the excluded evidence, but for the fact disclosed by the respondent's answer to a petition lately filed in this court by the respondent Jones, praying that he be discharged from his trust. The answer shows

that she has brought in the Supreme court an action, which is now pending, whereby she seeks to set aside the release.  It is proper under these circumstances that the decree to be entered in the present proceeding should leave undetermined the question of any claims that the petitioner may have against the accounting parties for their management of the trust for her benefit, prior to October 27th, 1877.

The reasons given by the referee for declining to allow the accounting parties credit for moneys retained by them from the petitioner's income, in satisfaction of her alleged indebtedness to one of their number, are, in my judgment, satisfactory.

The doctrine that a trustee who has paid moneys to the beneficiary of the income of a trust fund, at a time when no income was due, cannot be allowed to reimburse himself out of the income of the trust subsequently coming to his hands, seems to be firmly established in the law of this State.

Counsel for the accounting parties, in his elaborate and interesting brief, argues that the provisions of § 63, tit. 2, ch. 1, part 2 of the Revised Statutes (3 Banks, 7th ed., 2182), which declare the beneficial interest of a *cestui que trust* in the rents and profits of lands, inalienable, have no application to trusts for the payment of income of personalty ; he insists that while the contrary notion has been asserted in certain decided cases, it has never received the positive sanction of our highest court and has been doubted and disapproved by inferior tribunals.  I lately had occasion in Matter of Hoyt (*ante*, 432), to consider with some care the question here under discussion,

and felt constrained, in view of the cases there cited, to hold that income from the personalty of a trust estate no less than income from its realty is inalienable under § 63, *supra*. If this conclusion is correct, it is manifest that nothing which this petitioner may have done or omitted to do, can have authorized her trustees to reimburse themselves, out of the income in their hands, for moneys advanced to her before such income had accrued.

I think, too, that the petitioner's counsel must be sustained in his contention that the claim of trustee Jones against the balance of income in his hands is a claim of set-off between parties in different rights, and could not be allowed in this proceeding, even if there were no limitations upon the jurisdiction of the Surrogate's court in such matters (Whitaker v. Rush, *Amb.*, 407; Freeman v. Lomas, 9 *Hare*, 109; Medlicot v. Bowes, 1 *Ves. Sr.*, 207; Middleton v. Pollock, 20 *L. R. Eq.*, 29; Gale v. Luttrell, 1 *Y. & J.*, 180; Perry v. Bale, 1 *Dem.*, 452; Matter of Livingston, 27 *Hun*, 607). And even if the mutual demands between the petitioner and her trustee might be the subject of set-off in a court of general jurisdiction, they cannot be here adjusted (Stillwell v. Carpenter, 5 *N. Y.*, 414).

As I understand the evidence, however, the referee's finding that on January 31st, 1884, the sum of $5,183.14 was due from the trustees as balance of income, must be somewhat modified, and for the following reason: This finding is based in part upon a concession made by the petitioner, for the purposes of this proceeding, that all the income which accrued

after October 27th, 1877, and prior to January 1st, 1881, has been paid.

The referee holds that the trustees are chargeable with interest upon the Jones mortgage from the date last named until January 31st, 1884, and, while he allows them certain credits amounting to $194.48 for disbursements on the petitioner's account, he gives them no credit at all for moneys paid during that period to the petitioner herself. It appears by the evidence, as summed up in the stipulation annexed to the referee's report, that the moneys so paid amount in all to $1,350. I think that the respondents may justly insist that for a portion of this $1,350 credit should be given them in this accounting. The only reason why they cannot be credited with all of it, is the fact that, during the period referred to, trustee Jones is shown to have collected rents of property not connected with the trust, in which collections the petitioner had an interest of $840.94. If, as regards such portion of the $1,350 as was needed to discharge the trustees' obligation to the petitioner on account of these rents, the respondents cannot be credited in this accounting, it is nevertheless true that they may properly be credited with the surplus—*i. e.*, with the sum of $509.06. Before these accounts were filed, certain changes were made in the investments of the trust property to which this petitioner has not objected. As a result, the principal of the fund was reduced from $25,000 to $24,911.10. That amount is secured by a mortgage executed by Jones to Gardiner and to Louisa L. Jones, now deceased, who was in her lifetime executrix of this estate. It is needless to cite

authorities in support of the proposition that a trustee cannot lawfully borrow the trust fund in his charge. The findings of the referee to this effect must be sustained.

By the terms of the above named mortgage which was executed on October 13th, 1873, the mortgagor Jones bound himself to pay interest at the rate of seven per cent. until his principal indebtedness should be discharged. In view of the decision of the Court of Appeals in O'Brien v. Young (95 *N. Y.*, 428) it would seem that, notwithstanding the statute reducing the legal rate of interest in this State, interest at seven per cent. has been chargeable upon the mortgage from the date of its creation.

While the respondent Jones was guilty of a breach of trust in borrowing the fund for which he gave his mortgage as security, his associate cannot urge that fact as a bar to his own liability to be charged with interest at 7 per cent. It is not denied by trustee Gardiner that he assented to the loan of the fund to his co-trustee, so that his liability for the principal fund is undoubted. He would not, however, be personally bound by the contract of the mortgagor to pay interest at 7 per cent., and, if the petitioner were now pursuing him for his misconduct in assenting to the loan, he could not be held for more than legal interest, in the absence of evidence that he had personally profited by the transaction; but the petitioner now seeks to charge him for his neglect in failing to collect interest at 7 per cent. as it fell due. The referee was warranted in finding that the petitioner's claim is well founded.

The report of the referee, with the modifications hereinbefore specified, is confirmed, and a decree to that effect may be entered accordingly.