THE PEOPLE OF THE STATE OF NEW YORK ex rel. EMIGRANT INDUSTRIAL SAVINGS BANK, Appellant, v. JAMES J. SEXTON and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.*

First Department, May 17, 1940.

* Modfg. and affg. 173 Misc. 538.

*William H. King* of counsel [*Eugene Fay,* attorney], for the appellant.

*Paxton Blair* of counsel [*Stanley Buchsbaum* and *Arthur H. Goldberg* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondents.

*Henry Epstein* of counsel [*John J. Bennett, Jr., Attorney-General*], *amicus curiæ.*

CALLAHAN, J. This proceeding was brought under the provisions of the State Tax Law to reduce as excessive for overvaluation an assessment for taxation of $800,000 for 1932 on the relator's real property, known as the Hudson Theatre Building, the petition alleging that the actual value was no more than $725,000. The relator paid the taxes on April 29, 1932. The return to the writ denied that the assessed valuation was excessive.

The issues in the certiorari proceeding were tried before a referee. The Special Term considered the referee's report, and rendered its decision on June 27, 1939, but the final order directing the reduction of the assessment was not entered until September 16, 1939.

Chapter 594 of the Laws of 1939 took effect July 1, 1939. This statute reads as follows:

" Section 1. Chapter twenty-nine of the laws of nineteen hundred nine, entitled ' An act relating to municipal corporations, constituting chapter twenty-four of the consolidated laws,' is hereby amended by adding a new section, to be section three-a, to read as follows:

" § 3-a. Rate of interest on judgments and accrued claims against municipal corporations. The rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed four per centum per annum. The term ' municipal corporation ' as used in this section shall mean and include a city, county, village, town, school district, or a special or public district organized for the purpose of financing the costs of public improvements.

" § 2. This act shall take effect July first, nineteen hundred thirty-nine."

On the settlement of the final order the question was raised as to whether a refund of taxes ordered by the court should carry

interest at the rate of four per centum per annum, as contended by the city, or at the rate of six per centum per annum, as contended by the relator.

It was conceded that prior to July 1, 1939, the city would have had to pay interest on such refund at the rate of six per centum per annum.

The court below held that the rate of interest to be applied should be the rate in existence at the time of the rendition of the judgment (citing *Salter* v. *Utica & Black River R. R. Co.*, 86 N. Y. 401), and that the plain language of the statute itself required that the rate of interest be fixed at four per centum per annum. The final order directed payment of interest at the rate of four per centum per annum from the date of payment of the excessive taxes by the relator.

The relator appeals from that final order " insofar as the said final order limits the rate of interest directed to be paid upon the said refund of excess taxes to the rate of four per cent per annum and fails to direct payment of such interest at the rate of six per cent per annum."

The relator contends that chapter 594 of the Laws of 1939 is unconstitutional, because it is indefinite, incapable of enforcement, and an unlawful delegation of legislative power. It claims that the provision in the statute that the rate of interest to be paid by the municipality " shall not exceed four per centum per annum upon any judgment or accrued claim," violates section 1 of article 3 of the State Constitution, in that it unlawfully delegates legislative power to unnamed persons or bodies, and that it gives the power to fix rates of interest not to exceed four per centum per annum, without providing who is to fix the precise rate, and without supplying any standard or measure of how the rate fixed is to be arrived at.

The relator also contends that, should we determine that chapter 594 of the Laws of 1939 is constitutional, then it is entitled to payment of interest at the rate of six per centum per annum from the time of payment by it of the excess taxes (April 29, 1932) to the date of refund by the city; or at the rate of six per centum per annum until July 1, 1939 (the effective date of chapter 594 of the Laws of 1939), and at four per centum per annum thereafter.

That the statute involved herein differs from the general law applicable to others than municipalities would not render it unconstitutional, for undoubtedly the classification has some relation to the distinction made. We think that the statute is to be construed to mean that, in the absence of an agreement to the contrary between the city and its creditors, the courts are to determine the rate of interest applicable on any judgments or accrued claims sought

to be enforced against municipalities, within the maximum rate of four per centum per annum. The power to grant and fix interest has been exercised by the judicial branch of the government for many years, and under varying circumstances. Interest is sometimes awarded in the nature of a penalty, or as damages, or for the purpose of awarding just compensation, depending on the claim to which it relates. We think it was the clear intention of the Legislature, in providing that interest should not exceed four per centum per annum, to direct the courts to fix the precise rate, guided by those legal and equitable principles applicable to the fixation of reasonable interest, considering the nature of the claim and any facts relevant to the subject of the rate that might appear from the proof, or such matters of which the court could take judicial notice.

The courts have gone so far as to say that, in the absence of a stipulation to pay interest, a statute may provide that no interest is to be recovered against the sovereign on unpaid accounts or claims. (*Seaboard Air Line R. Co.* v. *United States*, 261 U. S. 299; *Missouri & Arkansas Co.* v. *Sebastian County*, 249 id. 170.) Undoubtedly as to a municipality the Legislature might enact any reasonable provisions as to payment of interest on indebtedness.

The allowance of interest has been largely a matter of statutory origin, and not a development of the common law (*U. S. Mortgage Co.* v. *Sperry*, 138 U. S. 313; *National Bank, etc.,* v. *Mechanics' National Bank*, 94 id. 437; *Western T. & Coal Co.* v. *Kilderhouse*, 87 N. Y. 430; *Woerz* v. *Schumacher*, 37 App. Div. 374; affd., 161 N. Y. 530), and the Legislature has the widest powers on the subject. The Legislature has not by this statute sought to confer its whole power on the subject upon the judicial branch, for it fixed a maximum beyond which the courts may not go. Delegation to another branch of the government of the power to fix reasonable rates for charges made for public utilities, to fix ferry rates, and to locate highways have, among other things, been upheld as a proper delegation of legislative power. (See *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123, and cases cited.)

The fair and reasonable rate of interest may vary from time to time. Recognizing this constantly changing condition, the Legislature fixes a maximum, and the courts fix the precise rate, based on the facts presented. Of course, no fixation could be made contrary to a stipulated rate, where a rate was fixed by agreement; but, in the absence of such agreement, we see no constitutional obstacle to the delegation of the right of the courts to fix a reasonable rate.

Having determined the constitutionality of chapter 594 of the Laws of 1939, the issue remains as to whether this statute requires

the court to limit the rate of interest on the tax refund not to exceed four per centum per annum from April 29, 1932, the date of the payment of the taxes.

Since prior to 1932, section 296 of the Tax Law, relating to review by certiorari for the correction of excessive tax assessments, has provided that where an order is made compelling reduction of an assessment, the over-assessment shall be refunded by repaying to the taxpayer the amount paid by him in excess of what the taxes would have been if the assessment had been as ordered, together with interest thereon from the date of payment. The word " interest " in this section undoubtedly means interest at the legal rate.

The legal rate of interest in the State of New York, as fixed by section 370 of the General Business Law, has been six per centum per annum since 1880. The only change made has been that noted by chapter 594 of the Laws of 1939.

The first question presented by this appeal is whether it was intended by the Legislature that chapter 594 of the Laws of 1939 should have a retroactive effect, so as to be applicable to an award for a tax refund which was reduced to judgment after its effective date, even though the tax had been paid and the proceeding to review commenced long prior thereto.

We find nothing in the statute itself to warrant a holding that the Legislature intended to have the lower rate applied retroactively in a case such as the present.

In the absence of a clear expression of legislative intention to justify retroactive application, a statute must be construed prospectively. (*Brewster* v. *Gage*, 280 U. S. 327; *Jacobus* v. *Colgate*, 217 N. Y. 235; *People ex rel. Central Trust Co.* v. *Prendergast*, 202 id. 188; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 id. 223.) The rule is sometimes stated to be that statutes are presumed to be prospective only unless the contrary clearly appears. (*N. Y. & Oswego M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473.) While remedial statutes may be applied retroactively, provided they do not impair contract rights or interfere with vested rights, we are now addressing ourselves to a question of legislative intent rather than legislative power, and need not determine whether the right to interest in this case relates to the remedy only. The general rule that ordinarily statutes operate prospectively applies to statutes changing the rate of interest on debts, obligations, etc. (*Texas & Pacific R. Co.* v. *Anderson*, 149 U. S. 237.)

Respondents contend that the use of the words limiting the rate of interest " upon any judgment or accrued claim " indicates an intention to apply the statute to all claims sought to be reduced

to judgment after its effective date, even though the claims accrued prior to July 1, 1939. We do not consider that the use of these words indicates such an intention concerning the rate of interest to be awarded for any period prior to the effective date of the statute. The phraseology, " judgment or accrued claim " appears to have been used as sufficiently comprehensive to include not only claims that have been reduced to judgment, but all claims that have accrued sufficiently to be the subject of judgment. The word " accrued " denotes a particular kind of claim, and does not indicate an intention to have the law applied retroactively. We construe the statute to be a declaration by the Legislature that the six per centum rate of interest is presently found too high as against municipalities and that from the effective date of the law a sum not to exceed four per centum per annum would be the proper rate on judgments and accrued claims against such municipalities. It would, therefore, seem to be the intention of the Legislature to have the statute applied so that any award for interest for a priod prior to July 1, 1939, would be at the six per centum rate, and interest awarded for the period after that date would be at the new rate. At least we hold that was the legislative intent as to a claim under a statute creating the right to a refund of excessive taxes such as that involved in this proceeding.

The Special Term, in fixing the interest at four per centum, said that the case was controlled by the rule enunciated in *Salter* v. *Utica & Black Riv. R. R. Co.* (86 N. Y. 401), to wit, that the rate of interest should be the rate in effect at the time of the rendition of the judgment. That is the rule usually applied in cases involving rights which do not rise until the entry of judgment. The *Salter* case (*supra*) was an action in tort to enforce a claim for damages for wrongful death, under a statute which directed that the damages be allowed with interest from the date of the death to the date of the judgment. The present case is not similar to one for damages based upon a tort claim. In such a case no right to the repayment of moneys is involved. The present claim is predicated on the right to repayment of an excessive sum collected under compulsion by the sovereign for taxes, by reason of a statute containing the requirement that when it determined by a judicial tribunal that the amount that has been collected is excessive, such excess is to be refunded with interest.

In view of the provisions section 296 of the Tax Law, the right to a tax refund might be said to be one on a contract implied in law, made at the time the city received the excess payment, that it would refund such excess with legal interest. True, the contract thus implied is a fictitious one and the right might more accurately

be described as a statutory one, but at least the present claim is one substantially different from a claim arising under a statute giving interest on a tort liability. The right to recover for negligent killing does not rest in any sense on an implied contract. A claim for tort is wholly contingent, and the right to interest on a verdict in such a case has no resemblance to the right to recover back from the sovereign moneys paid in excess of what is justly due.

The promise implied in the present case, to refund excess taxes paid with legal interest, created a right in the taxpayer which, if not a vested property right to the return of a definite sum, was not a mere contingent claim, although the amount of the repayment was contingent until it was determined by the court. The test to be applied is: Was there an obligation to repay under the statute which was fixed as an implied promise? We think that said obligation was so fixed in this case from the date of the payment of the tax, and that the subsequent determination that an excess payment had been exacted was a mere declaration that it had existed from the time of the collection of the overpayment. Were the promise implied herein to repay a specific rate of interest, a subsequent statute could not change the right to receive the rate of interest. We are of the view that the contract implied here was one to repay interest at such rate or rates as might be prescribed by law from time to time until the repayment had been made. Therefore, the promise of the city will be discharged by paying interest at the rate of six per centum per annum during the period in which that rate was fixed as the legal rate of interest, and by paying a rate not to exceed four per centum per annum during the period when that rate was fixed as the maximum amount of interest to be paid, after the proper rate is fixed by the court.

In other words, we think that the implied contract which was created in 1932 in relator's favor was made in contemplation of the legislative power to make changes in the statutory rate of interest. Included in the terms of the contract as the promise to repay with interest at whatever rate might prevail by statute from time to time.

A similar holding was made in the case of *O'Brien* v. *Young* (95 N. Y. 428). That action involved the rate of interest payable on a judgment which was procured 1877 and attempted to be collected by the sheriff in 1883. By statute effective on January 1, 1880, the legal rate of interest was reduced from seven per centum to six per centum. The court, in declaring the principles to be applied with respect to the amount interest to be collected by the sheriff, said (at pp. 432, 433):

"The same principles apply to all implied contracts. When one makes a valid agreement to pay interest at any stipulated rate for any time, he is bound to pay it, and no legislative enactment can release him from his obligation. But in all cases where the obligation to pay interest is one merely implied by the law or is imposed by law, and there is no contract to pay except the fictitious one which the law implies, then the rate of interest must at all times be the statutory rate. * * *

"This judgment, so far as pertains to the question we are now considering, can have no other or greater force than if a valid statute had been enacted requiring the defendant to pay the same sum with interest. Under such a statute, interest would be computed, not at the rate in force when the statute was enacted, but according to the rate in force during the time of default in payment. A different rule would apply if a judgment or statute should require the payment of a given sum with interest at a specified rate. Then interest at the rate specified would form part of the obligation to be discharged.

"Here, then, the defendant did not in fact contract or promise to pay this judgment, or the interest thereon. The law made it his duty to pay the interest, and implied a promise that he would pay it. That duty is discharged by paying such interest as the law, during the time of default in paying the principal sum, prescribed as the legal rate."

A case arising under the same New York statute as that in *O'Brien* v. *Young* (*supra*) and likewise involving interest on a judgment was considered by the Supreme Court of the United States in *Morley* v. *Lake Shore R. Co.* (146 U. S. 162). That court held that the right to interest on a judgment was subject to statutory control, that a judgment was not a contract within the meaning of the constitutional limitation against impairment of contract obligations. That court upheld the decision of the New York court that the change in the rate of interest became effective from the effective date of the statute.

We are not unmindful of the fact that the statute involved in *O'Brien* v. *Young* (*supra*) and *Morley* v. *Lake Shore R. Co.* (*supra*) contained a saving clause which provided that "nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this act." No such saving clause is contained in the present statute. However, in *O'Brien* v. *Young* (*supra*) the court construed the saving clause as not applying to the judgment involved in that case. In *Morley* v. *Lake Shore R. Co.* (*supra*) the Supreme Court of the United States felt itself bound by the State court's view on this question of con-

struction. Despite the inapplicability of the saving clause no attempt was made to apply the reduction of interest retroactively.

We have likewise considered that in *O'Brien* v. *Young* (*supra*) and in *Morley* v. *Lake Shore R. Co.* (*supra*) the interest sought to be collected was that accruing on a judgment which was entered before the amendment to the statute; whereas here the judgment was entered after the amendment of the statute. We do not think that this alters the case. In both instances the obligation to pay interest was one imposed by law, and the statutes effecting a reduction in interest were adopted between the time that the statutory obligation was created and the time when its collection was sought to be enforced.

In any event, the obligation to pay interest in this case is one imposed by law, and the cases cited enunciate the principle that the rate of interest in such cases is at all times to be the statutory rate. The statute in this case, though it has no saving clause, does not expressly provide for retroactive application. Under such circumstances, we need not determine what the legal result would be as to interest on the sort of claim involved herein if the statute did attempt to have the rate changed retroactively.

The order should be modified by directing that the refund should bear interest at the rate of six per centum per annum up to July 1, 1939, and at the rate of four per centum per annum thereafter until paid; and, as so modified, affirmed, without costs.

MARTIN, P. J., and DORE, J., concur; TOWNLEY and COHN, JJ., dissent and vote to affirm.

TOWNLEY, J. (dissenting). I dissent and vote to affirm. The claim to a refund did not accrue until the entry of the judgment reducing the assessment. Prior to that the assessment was presumptively correct and no right to the repayment of any part of the tax existed. The judgment here was not entered until after the effective date of the statute fixing the interest rate at four per cent and that statute must control. This claim differed from that in a condemnation proceeding because there the right to compensation accrues immediately upon the taking of the property.

COHN, J., concurs.

Order modified by directing that the refund should bear interest at the rate of six per centum per annum up to July 1, 1939, and at the rate of four per centum per annum thereafter until paid; and, as so modified, affirmed, without costs. Settle order on notice.