James J. Crisona, J.
In this action to foreclose a mortgage, a judgment of foreclosure and sale has been presented to me for signature. Annexed to the judgment is the report of the Beferee to ascertain and compute the amount due to the plaintiff for principal and interest. In computing interest, the Beferee has allowed the plaintiff interest at a rate of 7.25% from the date of default, November 1, 1968, to February 17, 1969, and at a rate of 7:5% from February 17, 1969 to the date of the report. Since the interest specified in the mortgage was at a rate of 6%, the allowance of interest at the stated higher rates is obviously predicated upon the Beferee’s conclusion that the legal rate of interest for the periods in question was 7.25% and 7.5% respectively. The issue, then, is whether the Beferee’s conclusion concerning the legal rate of interest is correct. For reasons to be stated below, I hold that it is.
It is well established that where an instrument requires the payment of a principal sum at a future date with interest at a specific rate and the obligor defaults, the interest payable after the default is then payable as damages, no longer as *705 interest under the instrument creating the obligation. (Ferris v. Hard, 135 N. Y. 354, 365.) It is equally well established that absent a specific statutory or contractual provision to the contrary, the interest payable as damages is payable at the legal rate of interest which prevails at the time of the default. (O’Brien v. Young, 95 N. Y. 428.) This is true even though the legal rate of interest has changed between the time the obligation was incurred and the time of default. (Ferris v. Hard, supra.) Of course, the interest payable from the time of judgment is at the legal rate prevailing at that time, again, regardless of whether or not that rate has changed. (O’Brien v. Young, supra; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5004.01.) So, the applicability of this decision is not only to the period of time between the default and the judgment; it is equally applicable to postjudgment interest as well.
CPLR 5004 provides: ‘ ‘ Interest shall be at the legal rate, except where otherwise prescribed by statute.” The definition of what is the ‘ ‘ legal rate of interest ’ ’ has always been supplied, by judicial construction, from what may be called the “usury statute ”, General Obligations Law (§ 5-501) and its predecessor statutes. (Taylor v. Wing, 84 N. Y. 471; Collier v. Granger, 258 F. Supp. 717, 719; see 5 Weinstein-Korn-Miller, par. 5004.01 and the cases cited therein.) Thus, until the amendment of section 5-501 of the General Obligations Law by chapter 349 of the Laws of 1968, there was no question but that the legal rate of interest was 6%, as provided in that statute.
By virtue of the amendment, however, .subdivision 1 of section 5-501 of the General Obligations Law now provides that: “ The rate of interest as computed pursuant to this title upon the loan or forbearance of any money, goods, or things in action, except as otherwise provided by law, shall be the rate prescribed by the banking board pursuant to section fourteen-a of' the banking law, or if no rate has been so prescribed, six per centum per annum.”
Section 14-a of the Banking Law, added by chapter 349 of the Laws of 1968, .states that it is the policy of the State of New York that the rate of interest provided in section 5-501 of the General Obligations Law shall be adjusted by the Banking Board in response to changed economic conditions, so as to insure the availability of credit at reasonable rates, while affording a competitive return to creditors. It then states that in order to effectuate this policy, the Banking Board shall have power ‘ ‘ from time to time, but not more often than quarterly, to prescribe by regulation a rate of interest not less than five *706 per centum per annum nor more than seven and one-half per centum pet" annum as the maximum rate of interest to be charged, taken or received, upon a loan or forbearance of any money, goods or things in action except as othewise provided by law”. (§ 14-a, subd. 2, par. [a], subpar. [1].) The Legislature stated, in section 13 of chapter 349 of the Laws of 1968, that its act, in adding section 14-a “ and amending sections 108, 173, 202, 235-b, 293-a, 380-e, 454, 510-a, 577 [of the Banking Law] and General Obligations Law, §§ 5-501, 524 ” shall take effect on May 15, 1968.
Thereafter, the Banking Board, pursuant to section 14-a, adopted General Regulation 37, which provides in pertinent part that: ‘ ‘ For the purpose of sections 5-501 and 5-524 of the General Obligations Law and sections 108(1), 173(1), 202(1), 235-b, 293-a(1), 380-e, 454(12) (a) (6), 510-a(l) and 577(1) of the Banking Law and except as otherwise provided by law, the maximum rate of interest to be charged, taken or received, upon a loan or forbearance of any money, goods, or things in action, made on or after July 1, 1968 and before the earlier of (a) the effective date of an amendment to this regulation fixing a new maximum rate of interest or (b) September 2, 1971, shall be 7.25% per annum.” (3 NYCRR 34.1.)
Thus, the Banking Board having prescribed a rate of interest pursuant to section 14-a of the Banking Law, the new rate of interest fixed by section 5-501 of the General Obligations Law, effective July 1, 1968, was 7.25%. In February, 1969 the Board adopted a regulation (General Regulations of Banking Board, 3 NYCRR 4.1) raising the maximum rate of interest to 7.5% effective February 16, 1969, and so, the rate fixed by section 5-501 changed accordingly. On January 16, 1969, there appeared on the first page of the New York Law Journal, under the heading ‘ ‘ State Law Ruling ’ ’ an opinion by the Attorney-General of the State of New York. The burden of that opinion was that the changes in the General Obligations Law, the amendment of the Banking Law, and the regulation of the Banking Board, did not change the interest rate on money judgments. The Attorney-General concluded that ‘ ‘ presently the legal rate of interest upon a money judgment is 6 per centum per annum, except where otherwise prescribed by statute.” (N. Y. L. J., Jan. 16, 1969, pp. 1 and 4.) By what apparently was sheer coincidence, there appeared in the New York Law Journal of January 16, 1969 a decision dealing with the same issue, by Mr. Justice Ritchie of the Supreme Court, Suffolk County (Dime Sav. Bank of Brooklyn v. Carlozzo, *707 N. Y. L. J., p. 19, col. 1, since reported in 58 Misc 2d 821). In that decision, it was held that interest on a mortgage, upon which there was a default, should have been computed at a rate of 7.25% from July 1, 1968 to the date of the Referee’s report (Sept. 11, 1968).
Thus, the only reported decision on this issue is at odds with the stated opinion of the Attorney-General of this State. The only other statement of a point of view on this issue which the court has been able to find is in a two-part article entitled “ New York’s New Legal Rate of Interest; Law of Damages ” (N. Y. L. J., March 13 and March 14, 1969, p. 4 of each issue). The author, George H. Sintenis, Esq., a vice-president of the winning plaintiff bank in Dime Sav. Bank v. Carlozzo (supra), takes the position that the decision of Mr. Justice Ritchie is correct, and the opinion of the Attorney-General in error. Despite the fact that the author must be counted as a partisan on this issue, the articles in question are scholarly and comprehensive in their coverage of the law and helpful to anyone interested in this .subject. Finally, the court has had the benefit of the Attorney-General’s response to the Sintenis articles, contained in a letter to the Editor of the New York Law Journal on March 24,1969.
The bases for the opinion of the Attorney-General may be summarized as follows:
(1) None of the statutes specifically referred to in section 13 of chapter 349 of the Laws of 1968, or in General Regulation No. 37, relates to fixing the rate of interest on judgments. Moreover, the Legislature did not see fit to amend the sections of the OPLR relating to judgments.
(2) The statement of policy contained in section 14-a does not relate to judgments, merely to insuring availability of credit while affording creditors a proper return on their money.
(3) The decision in Mandelino v. Fribourg (23 N Y 2d 145), in which the Court of Appeals held that the prescription of interest rates upon any loan or forbearance of any money, goods or things in action in sections 370 and 371 of the General Business Law (the predecesssor usury statute to General Obligations Law, § 5-501) did not apply to interest stated in a purchase-money mortgage. The Attorney-General interprets the same statutory language as not being applicable to interest on money judgments.
I conclude that the rates of interest prescribed by the Banking Board pursuant to section 14-a of the Banking Law do constitute the ‘ ‘ legal rate of interest ’ ’ as used in OPLR 5004 and, therefore, that the legal rate of interest on money judg *708 ments was 7.25% from July 1, 1968 to February 16, 1969, and 7.5% thereafter. It is true that chapter 349 of the Laws of 1968 and the regulation adopted pursuant thereto do not specify CPLR 5004 as being one of the statutes amended thereby. It is also true that the Legislature did not amend CPLR 5004. It is equally true, however, that neither the General Business Law (§§ 370, 371), nor General Obligations Law (§ 5-501) prior to its amendment, ever contained any mention of ‘ ‘ money judgments ” or made any reference to CPLR 5004 or its predecessor sections (Civ. Prac. Act, §§ 480, 481). And yet, as stated earlier, the courts regularly looked to General Business Law (§ 370) and General Obligations Law (§ 5-501) to find the 6% “ legal rate of interest ” applicable to money judgments. (See McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 5004, Legislative Studies and Reports; 5 Weinstein-Korn-Miller, N. Y. Prac., par. 5004.01.) Why, then, should it have been necessary for the Legislature, or the Banking Board, to refer to “ money judgments ” or to CPLR 5004? Is it not more plausible to reason that the failure to make these specific references was wholly consistent with the state of the prior law, and that by amending section 5-501 of the General Obligations Law the Legislature in effect changed the legal rate of interest on money judgments ? I believe so and I find that by virtue of the amendment of section 5-501 of the General Obligations Law (and that statute certainly is mentioned in section 14-a of the Banking Law and the Banking Board’s regulation), the legal rate of interest on money judgments was necessarily changed. What is that rate? It is “ the rate prescribed by the banking board pursuant to section fourteen-a of the banking law”. If no rate is prescribed, the rate is “ six per centum per annum ’ ’.
Nor is there anything in this holding which is inconsistent with the expressed intent of the Legislature. The fact that prior to these statutory changes, the legal rate of interest was on parity with the maximum rate of interest on a loan or forbearance would seem to indicate that it was always the policy of the law to afford the same competitive rate of return to judgment creditors as to other creditors. “ The award of interest [on a judgment] is founded .solely on the theory that there has been a deprivation of the use of money or its equivalent, and that unless interest be added, the party aggrieved is not made whole. Interest is compensation for the use of money.” (Lesjac Realty Corp. v. Mulhauser, 43 Misc 2d 439, 440.) It hardly requires extensive discussion to establish that the cost of money has risen substantially in recent years and *709 continues to rise up to the present time. The action of the Legislature in amending the statutes under discussion here was done in recognition of this situation. I believe that it is only realistic and fair that the interest rate on money judgments reflect the same economic facts of life.
Finally, the court believes that the decision in Mandelino v. Fribourg (23 N Y 2d 145, supra) is inapposite to the matter at issue here. In that case, it was held that a purchase-money mortgage is not a ‘‘ loan ’ ’ within the terms of the usury statute and, therefore, is not void for usury because it states a rate of interest higher than the maximum rate permitted by that statute. As was previously pointed out, the applicability of section 5-501 of the General Obligations Law to interest on money judgments has long been established. Nothing in Mandelino v. Fribourg (supra) either changes or weakens this principle.
For the foregoing reasons, the court approves the Referee’s computation of interest at 7.25% and 7.5% for the periods stated in his report and the judgment of foreclosure and sale is signed.