Arnold L. Fein, J.
 

 Defendants’ motions to dismiss, to set aside the verdict of the jury and for a new trial and for other relief and all other motions by defendants, as to which decision was reserved, are now denied.
 

 Plaintiff’s motion to add interest is granted to the extent of directing the clerk to add and include in the judgment interest at the rate of 6^> per annum, on the amount of the jury’s ver
 
 *493
 
 diet from January 30, 1963, the date of the commencement of the action, up to July 1,1968, and at the rate of 7%% per annum from July 1, 1968 to February 16, 1969 and at the rate of 7%% per annum from February 16,1969 to the date of the verdict.
 

 Plaintiff is entitled to interest on a jury’s verdict in its favor in an action for inducing breach of contract
 
 (De Long Corp.
 
 v.
 
 Morrison-Knudsen Co.,
 
 20 A D 2d 104, affd. 14 N Y 2d 346; CPLR 5001, subd. [a]).
 

 CPLR 5001 (subd. [b]) provides: “ Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.”
 

 Even if it be assumed, as plaintiff contends, that the inducement to breach and breach of the covenant not to assign the payments due under the construction contract occurred on May 2, 1960, it was not proved that any part of the damages were incurred on that date. There was a continuing inducement and breach as each payment by plaintiff to Raymar Contracting Corp. was turned over to the factor. However, Raymar continued its performance of the construction job until on or about April 2,1961, when its performance terminated. That was also the approximate date on which plaintiff became aware of the breach, the conspiracy, and the inducement, as well as the failure and inability of Raymar to perform, and the possibility that plaintiff might be required to perform in its stead, under the Miller Act (U. S. Code, tit. 40, § 270a
 
 et seq.).
 

 There was no demonstration, with any degree of precision as to dates, when the various items of damage were incurred. As the jury was instructed, the allowable damages were only those expenditures necessarily incurred by plaintiff to complete the construction subcontract, to the extent they were incurred as a proximate result of the inducement to breach and the consequent breach. The dates on which Raymar defaulted on the payments it was required to make were not proved. Nor was it established, with even approximate certainty as to dates, when plaintiff became obligated to or did in fact make good such payments or when it undertook and did or paid for the construction work necessary to be completed.
 

 Although CPLR 5001 (subd. [b]) permits interest “ from the earliest ascertainable date the cause of action existed ”, it excepts “ interest upon damages incurred thereafter ” which “ shall be computed from the date * * * incurred ”. The
 
 *494
 
 statutory test is not the date of breach, but rather the date the loss or damage was actually incurred. As the statute implicitly recognizes, the award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved. It is not to provide a windfall.
 
 (Lesjac Realty Corp.
 
 v.
 
 Mulhauser,
 
 43 Misc 2d 439;
 
 Matter of Kavares (MVAIC),
 
 29 A D 2d 68.)
 

 The jury was not requested or instructed to fix the date or dates when the damages were incurred, nor to allow or include interest in any verdict it might render. The general verdict was in the sum of $850,000. Since the damages sought to be proved were substantially in excess of that amount, it cannot be determined which items the jury accepted or rejected, either in whole or in part. On the evidence before it, and appropriate instructions, the jury properly could have followed either course, or a combination of both. Therefore, it cannot be determined on what dates the various elements of damage found by the jury were incurred.
 

 This makes it practically impossible and inequitable to apply the alternative provision in CPLR 5001 (subd. [b]): “ Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.”
 

 Under the circumstances, the court cannot determine
 
 “
 
 a single reasonable intermediate date.” It is appropriate, therefore, to fix the interest date as the date of the commencement of the action.
 
 (De Long Corp.
 
 v.
 
 Morrison-Knudsen Co.,
 
 20 A D 2d 104, affd. 14 N Y 2d 346,
 
 supra; Mathis
 
 v.
 
 Matthews,
 
 39 N. Y. S. 2d 242.) The persuasive rationale of
 
 Mathis
 
 seems to be incorporated in the present CPLR 5001 (subd. [b]). (See the Legislative Studies and Reports, and the Practice Commentary to CPLR 5001, Book 7B, McKinney’s Cons. Laws of N. Y., and the 1968-69 Pocket Part.)
 

 Plaintiff now urges, for the first time in its brief, that interest be allowed at the rate of 6% per annum up to July 1, 1968 and at 7%% per annum from July 1, 1968 to February 16, 1969 and at 7%% per annum from February 16, 1969 to the date of verdict (citing
 
 Jamaica Sav. Bank
 
 v.
 
 Giacomantonio,
 
 59 Misc 2d 704).
 

 CPLR 5004 provides: ‘‘ Interest shall be at the legal rate, except where otherwise prescribed by statute.” The determination of “ legal rate ” has always been construed in terms of the maximum permitted in the 6 ‘ usury statute ’ ’, now section
 
 *495
 
 5-501 of the General Obligations Law
 
 (Taylor
 
 v.
 
 Wing,
 
 84 N. Y. 471).
 

 Subdivision 1 of section 5-501 of the General Obligations Law was amended in 1968 to provide: ‘6 The rate of interest as computed pursuant to this title upon the loan or forbearance of any money, goods, or things in action, except as otherwise provided by law, shall be at the rate prescribed by the banking board pursuant to section fourteen-a of the banking law, or if no rate has been so prescribed, six per centum per annum.” (L. 1968, ch. 349, 944, 1072.)
 

 Section 14-a of the Banking Law was amended in 1968 by granting power to the banking board
 
 11
 
 to prescribe by regulation a rate of interest not less than five per centum per annum nor more than 7% per centum per annum as the maximum rate of interest to be charged, taken or received, upon a loan or forbearance of any money, goods or things in action, except as otherwise provided by law” (L. 1968, ch. 349).
 

 Pursuant to the statute, the Banking Board promulgated General Regulation part 4 providing that the maximum rate of interest for
 
 ‘ ‘
 
 The purpose of the General Obligations Law [and other statutes] * * * to be charged, taken or received upon a loan or forebearance of any money, goods, or things in action made on or after July 1, 1968 * * * shall be 7.25% per annum.” (3 NYCRR 4.1.) The regulation was amended in February, 1969 to increase the rate to 7.5% effective February 16, 1969.
 

 The question whether the change in the interest rate is applicable to interest on judgments and to interest on damage verdicts for breach of contract and other defaults from the date of breach or default has been ably discussed in four opinions. In
 
 Jamaica Sav. Bank
 
 v.
 
 Giacomantonio (supra)
 
 relied on by plaintiff, and in
 
 Dime Sav. Bank v. Carlozzo
 
 (58 Misc 2d 821), both mortgage foreclosure actions, it was held, with respect to defaults occurring after the effective date of the amendments to the statutes, that the new rates were applicable from the dates of default to the dates of the referees’ reports.
 

 On the other hand, in
 
 Lewis Enterprises
 
 v.
 
 Lewis-Marshal
 
 (59 Misc 2d 862), and in an opinion of the Attorney-General of the State of New York rendered to the County Clerk find Clerk of the Supreme Court, New York County (N. Y. L. J., Jan. 16, 1969, p. 1), it was ruled that the legal rate of interest applicable to money judgments remains at 6%.
 

 It would serve no useful purpose to repeat or recast the respective arguments in these learned opinions. (See, also, the tendentious article, New York’s New Legal Rate of Interest,
 
 *496
 
 Law of Damages, George H. Sintenis, N. Y. L. J., March 13, 14, 1969, p. 4). In essence the argument that the increase in rate of interest is not applicable to money judgments or to damages from the time of breach or default to verdict or judgment is founded upon the fact that the Legislature did not amend the pertinent CPLR sections to conform to the amendments to the General Obligations Law and the Banking Law. Historically, there has been resistance to allowing interest on a claim for the period between the time of breach or default and verdict or judgment. This suggests that statutes concerning the applicability and rate of interest should be construed strictly.
 

 The amendments to the General Obligations Law and ..the Banking Law specify that the new interest rates are applicable to a “ loan or forbearance of any money, goods, or things in action It is questionable whether a judgment, after rendition, or whether damages flowing from a breach of contract, a default or a tort can be construed to be
 
 “a
 
 loan or forbearance
 

 -However, it is indisputable that interest is now payable as damages from the time of breach, default or intentional tort.
 
 (Ferris
 
 v.
 
 Hard,
 
 135 N. Y. 354;
 
 O’Brien
 
 v.
 
 Young,
 
 95 N. Y. 428;
 
 Lesjac Realty Corp.
 
 v.
 
 Mulhauser,
 
 43 Misc 2d 439,
 
 supra; Matter of Kavares
 
 (MVAIC), 29 A D 2d 68,
 
 supra; De Long Corp.
 
 v.
 
 Morrison-Knudsen Co.,
 
 20 A D 2d 104, affd. 14 N Y 2d 346,
 
 supra;
 
 CPLR 5001 [a]). CPLR 5004 provides that such
 
 “
 
 interest shall be at the legal rate ”.
 

 Historically, the practice acts have not fixed the rate of interest. Judicial construction has always utilized as the ‘
 
 ‘
 
 legal rate ’ ’, the maximum rate of interest made applicable by. the General Obligations Law and its predecessor statutes.
 
 (Taylor
 
 v.
 
 Wing,
 
 84 N. Y. 471,
 
 supra; Collier
 
 v.
 
 Granger,
 
 258 F. Supp. 717, 719;
 
 O’Brien
 
 v.
 
 Young, supra).
 
 This was the sole basis for the 6% rate, held applicable prior to the cited amendments.
 

 In
 
 O’Brien
 
 v.
 
 Young (supra)
 
 it was held that interest
 
 on
 
 a judgment was to be determined upon the basis of the legal rate of interest during the period the judgment remained unpaid although it changed after entry of the judgment. The statutory rate had been 7% when the judgment was entered. It was reduced to 6% before the judgment was satisfied. The court ruled that the lower rate was applicable for the period commencing with the date of the reduction in rate. As a result two rates were held applicable, covering different periods. The case has been followed ever since, although some of the rationale in the separate opinions has been questioned.
 

 
 *497
 
 It must be concluded, on this authority, that the same rule is applicable to damages flowing from the intentional tort of inducing breach of contract, where the interest rate has been increased during the period between the accrual of the cause of action and the verdict. Such conclusion is logical and requisite to make operative the principle that interest is awarded as a matter of right ‘ ‘ to afford a plaintiff
 
 1
 
 full indemnification ’ for the defendant’s wrongful interference with his property rights ”
 
 (De Long Corp.
 
 v.
 
 Morrison-Knudsen Co.,
 
 14 N Y 2d 346, 348), and make whole the party aggrieved.
 
 (Lesjac Realty Corp.
 
 v.
 
 Mulhauser, supra; Matter of Kavares
 
 (MVAIC),
 
 supra.)
 

 That the Legislature did not amend CPLR 5004 does not require the conclusion that the old rate of interest is applicable under that section. The historical pattern is to the contrary. The
 
 “
 
 usury statute ” has always been the guide.