METROPOLITAN LIFE INSURANCE COMPANY, a corporation of the State of New York, Assignee of Gilpin, Van Trump & Montgomery, Incorporated, a corporation of the State of Delaware, Plaintiff,

v.

MONROE PARK, a limited partnership organized and existing under the laws of the State of Delaware, with Henry L. Weinstein as general partner, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted Dec. 15, 1981.
Decided Jan. 4, 1982.

William F. Lynch, II, and David H. Williams, of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

David Roeberg, of Roeberg & Associates, P.A., Wilmington, for defendant.

WALSH, Judge.

In this mortgage foreclosure action, the plaintiff-mortgagee, Metropolitan Life Insurance Company ("Metropolitan"), seeks to foreclose its lien on a large apartment complex operated by the defendant-mortgagor,

Monroe Park, a limited partnership. Monroe Park has raised several objections, both substantive and procedural, by which it seeks to preclude the entry of summary judgment. A liberal approach to the supplementation of the record under Superior Court Civil Rule 56 has been permitted to afford both parties an opportunity to present their positions on the question of whether, as a matter of law, a foreclosure sale should be ordered.

A statement of the history of the underlying debt is necessary to an understanding of the present status of the dispute. On April 5, 1973, Monroe Park executed a mortgage and a mortgage note in the amount of $5,800,000, both payable to Gilpin, Van Trump and Montgomery, Incorporated ("Gilpin"). Both instruments were assigned by Gilpin to Metropolitan on the same date and the mortgage was duly recorded. Although the mortgage recites the amount of the debt, a description of the real property pledged as security and the remedies available in the event of default, it does not specify the interest rate, the amount of the monthly payments or the beginning and ending time of monthly payments. The mortgage note, which was a non-recourse instrument, is more specific. It specifies an interest rate of 8.375 percent per annum with interest only payable until August 1, 1973, and regular monthly payments on principal and interest payable beginning September 1, 1973, in the amount of $46,400 for a period of 15 years. The note further provided for the payment of reasonable counsel fees of five percent in the event of default.

On January 19, 1981, Metropolitan filed this foreclosure action alleging that Monroe Park had been in default in its monthly payments since June 1, 1980. Metropolitan sought recovery of the unpaid principal balance, which, as of the date of the filing of the complaint, was asserted to be $5,158,-180.64. It also sought post-default interest in the amount of $551,148; late charges of $4,508.88; an escrow deficiency of $22,-295.34; and five percent counsel fees. Monroe Park promptly filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware seeking reorganization under Chapter 11 of the Bankruptcy Code. That filing operated as a stay of this action under 11 *U.S.C.* § 362(a).[1] Metropolitan then petitioned the Bankruptcy Court to lift the stay in order to permit it to pursue this foreclosure action on the ground that the fair market value of the property was less than the liens against it, including statutory liens imposed by the City of Wilmington and New Castle County for water and sewer service, and thus it was not adequately protected through bankruptcy participation. After a hearing, in which counsel for both Metropolitan and Monroe Park presented evidence concerning the amount of liens and the value of the property, the Bankruptcy Court concluded that the property has a fair market value of $6,000,000. Since Metropolitan's claim, including principal, interest and late charges, coupled with the statutory claims of the City and County, clearly exceeded that valuation, the Court ruled that Monroe Park's "equity cushion is non-existent and any appreciation is more than offset by continuing interest and late charges." The removal of the stay has permitted the parties to litigate the merits of the foreclosure action.

## I

It is on the strength of the ruling of the Bankruptcy Court that Metropolitan has moved for summary judgment, arguing, in effect, that the ruling has established the default as well as the amount of the debt under the principle of collateral estoppel. Monroe Park contends that the bankruptcy ruling, if entitled to any recognition, must be narrowly viewed since the task of that Court was merely to determine whether the value of the mortgaged property exceeded the secured and statutory liens.

---

1. Metropolitan had also sought and secured the appointment of a receiver, *pendente lite*, in the Court of Chancery to operate the project and receive rents. The Bankruptcy proceeding also served to stay that action and the defendant has remained in operation of the project as debtor in possession.

■ Under the doctrine of collateral estoppel, a judgment in a prior suit between the same parties serves to establish certain facts which were at issue and resolved by the prior ruling. *Tyndall v. Tyndall*, Del. Supr., 238 A.2d 343 (1968); *Foltz v. Pullman, Incorporated*, Del.Super., 319 A.2d 38 (1974). The doctrine is based upon the public policy that once the parties have had their day in court, they should not be permitted to relitigate the same factual contentions. *Bata v. Bata*, Del.Supr., 163 A.2d 493 (1960). The doctrine of collateral estoppel extends to rulings of a Bankruptcy Judge to the extent there has been an actual determination of a litigated issue common to a later state court proceeding. Cf. *Home Ben. Life Ins. Co. v. Blue Rock, Etc.*, Del.Super., 379 A.2d 1147 (1977).

■ Monroe Park argues that the task of the Bankruptcy Judge was a limited one: to ascertain whether the amount of Metropolitan's claim exceeded the value of the mortgaged premises. Once the gross projections established that fact, it argues, it was unnecessary for the Judge to fine tune her ruling to determine the exact date of default or the precise amount of interest owed. This approach is too simplistic. In its answer to Metropolitan's petition for relief from the stay in the Bankruptcy Court, Monroe Park admitted its failure to pay monthly installments of principal and interest since June 1, 1980, although it disputed the valuation of the mortgaged premises and Metropolitan's claim to interest and counsel fees. It also admitted the claimed principal balance ($5,158,180.64) as well as the amount claimed as late charges and escrow shortages. Indeed, the Bankruptcy Court referred to these amounts as "undisputed." It is true that the Bankruptcy Judge found it unnecessary to fix precisely the applicable rate of interest or the amount of counsel fees once she determined that the value of the secured property did not adequately protect Metropolitan's claim. The Bankruptcy Judge assumed the con-

tract rate (8.375 percent) for the purpose of demonstrating her conclusion that, even given the benefit of the lower figure, Monroe Park could claim no equity cushion. But the Court did specifically determine the fact of the default and the date of the default and those findings are not subject to further attack.

With regard to the claim for counsel fees, the Bankruptcy Judge determined there was nothing in the record upon which to conclude that five percent was excessive. Again, since the amount claimed ($24,318.31), even if disallowed in full, would not have restored the equity cushion, Monroe Park, as the party resisting summary judgment, is entitled to a fresh examination of that nonessential ruling of the Bankruptcy Court.

## II

■ Before addressing the parties' differences over the terms of the mortgage and note, it is necessary to consider Monroe Park's argument that the mortgage held by Metropolitan cannot form the basis for an action *scire facias sur mortgage* because it is not an instrument under seal as required by 25 *Del.C.* § 2101.[2] While acknowledging that the mortgage, as executed and recorded, lacks a seal, Metropolitan argues that the deficiency is a technical one which does not affect the validity of the mortgage as between the parties to the instrument. As a statement of general authority, Metropolitan's position is undoubtedly correct. 59 C.J.S.2d *Mortgages* § 115; 9 *Thompson on Real Property*, § 4669 (1958). But Monroe Park contends that because it defends this proceeding as a debtor in possession, a status akin to that of a trustee, it may advance defenses which a party to the mortgage would otherwise be estopped to assert.

■ Monroe Park did not question the validity of the mortgage as a secured claim before the Bankruptcy Court. Indeed, its answer in that Court admitted the execution of the mortgage instrument and part

---

2. This section prescribes the form of mortgage for creation of a lien on real estate in Delaware. The prescribed form includes the designation of a seal and subsection (b) authorizes that form as the basis for a proceeding "for the foreclosure of mortgages."

payment under its terms. But even if Monroe Park is considered to have standing to raise a belated objection to the form of the instrument, it cannot forestall this proceeding. A debtor in possession does possess the same rights as a trustee in bankruptcy in the administration of the debtor's property and is entitled to exercise comparable authority under Section 544(b) of the Bankruptcy Code.[3] But the statute creates merely a power of avoidance which must be measured by applicable state or federal law. 4 *Collier on Bankruptcy*, § 544.03[1]. The validity of instruments which purport to create liens under state law will continue to be tested by state law standards in effect at the time the act was required to be done. The trustee acquires no rights beyond those the creditor himself would have if he were asserting invalidity on his behalf. 4 *Collier on Bankruptcy*, § 544.03[2]; *Davis v. Willey*, D.C.Cal. 263 F. 588, 589 (1920); affd. 273 F. 397 (1921).

It is clear that Monroe Park, even as a debtor in possession, cannot claim a pre-default status which would exempt it from the general rule that a party to an instrument who accepts its benefits and recognizes its lien quality cannot assert its technical deficiencies.

### III

■ Monroe Park argues that the note and mortgage are two separate transactions, each of which provides separate and distinct remedies to the holder. Thus, it is argued, if this action be viewed as an action on the underlying debt, as evidenced by a note which contains no provisions defining default, providing for interest after maturity or permitting acceleration of the principal, Metropolitan cannot secure summary judgment on the strength of the instruments of debt, even if in proper form. In effect, Monroe Park contends that the basic debt instrument, the note, lacks essential remedy provisions which would permit this

Court to ascertain the total obligation in default. Nor may the mortgage supply the necessary terms because it is not referred to in the note.

Monroe Park's argument does not stand close analysis. To begin with, the parties did not execute a note but a document entitled a "Mortgage Note." The parties, principal, amount and date of that note are identical to those in the mortgage. In the non-recourse provision of the note there is specific reference to a "mortgage of even date hereof," and the recital that the holder of the note would seek recovery of a deficiency from the obligor "in any action to foreclose the aforesaid mortgage."

The mortgage also contains references to the note. The preamble clause reads:

"WHEREAS, Mortgagor by its note (hereinafter called "Note") bearing even date herewith is indebted to Mortgagee in the principal sum of FIVE MILLION EIGHT HUNDRED THOUSAND DOLLARS ($5,800,000.00) lawful money of the United States of America, advanced or to be advanced by Mortgagee to Mortgagor according to the terms and conditions of the Note to which reference is hereby made, any unpaid remaining balance provided for in the Note or herein being payable not later than August 1, 1988."

In addition, the mortgagor's payment obligation specifically incorporates the force of the note:

"2. Payment of Sums Secured. Mortgagor shall pay to Mortgagee the principal of and interest upon the Note according to the terms of the Note secured hereby, reasonable charges fixed by Mortgagee to satisfy and discharge this Mortgage of record, and all other sums hereby secured; and shall keep and perform every other covenant and agreement of such Note and this Mortgage."

**3.** 11 U.S.C. § 544(b) provides:
"(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor hold-

ing an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(c) of this title."

■ It is the usual view that the mortgage and a note or bond secured by it are considered part of one transaction and, where possible, construed together in order to gain the intentions of the parties. 55 Am.Jur.2d, *Mortgages,* § 176 (1971); 59 C.J.S., Mortgages, § 156 (1949); *Boyette v. Carden,* Fla.App., 347 So.2d 759 (1977). In Delaware, the mortgage creates no interest in the land but is merely "a high security" for the payment of the debt. 2 *Woolley on Delaware Practice,* § 1353. Where, as here, there are no significant inconsistencies between the two instruments, though they are not identical, the security remedies contained in the mortgage may supplement the obligation of repayment unless the intention of the parties clearly indicates the contrary. Cf. *Pauley Petroleum, Inc. v. Continental Oil Co.,* Del.Ch., 231 A.2d 450 (1967); affd. 239 A.2d 629 (1968).

■ Concerning Metropolitan's right to accelerate the debt upon default, it is agreed that there is no provision in the note which grants that right to the holder. The note provides only for the repayment of the note in monthly installments, representing principal and interest, until paid in full on September 1, 1988. For its part, the mortgage grants the mortgagee the right to accelerate the remaining debt, plus interest upon the occurrence of a specified "Event of Default," one of which is declared to be the failure to pay any installment of principal and interest when due. The Bankruptcy Judge found as a fact that there had been a failure to make monthly payments since June 1, 1980, a fact never seriously contested by Monroe Park before the Bankruptcy Court or here. Although Monroe Park intimates that a default in escrow payments had earlier occurred, the option to declare an "Event of Default" as a default for the purpose of foreclosure rests, under the mortgage instrument, with the mortgagee. The fact that Metropolitan did not elect to treat earlier instances of late payments as a basis for foreclosure does not affect its present right. Whether viewed as established factually by the Bankruptcy Court, or in the present record, the mortgage is clearly in default, as a matter of law, with the failure to make the June 1, 1980 payment. As of that date, the principal is deemed owed and due.

## IV

■ The most troublesome issue which stands in the path of Metropolitan's effort to secure summary judgment is the calculation of post-default interest. Before the Bankruptcy Court, Metropolitan sought to fix the post-default interest rate at 15 percent, "the maximum rate permitted by law," as the mortgage recites. Monroe Park contended that the contract rate, 8.375 percent, must control, apparently on the theory that as the debtor in possession under a stay of the foreclosure action, it was entitled to invoke the terms of the contract. The Bankruptcy Judge calculated the interest obligation at both rates but declined to rule that either rate was in effect, since even if the lower contract rate were applied, no equity cushion existed.

Here, Monroe Park argues that the contract rate must apply because the note is silent as to post-maturity interest. Thus, it argues, since this action is a suit on a contract containing an expressed rate of interest, that rate must apply for purposes of fixing damages. Monroe Park also relies upon the language of 6 *Del.C.* § 2301(a), which became effective on April 18, 1980. It provided:

"(a) The legal rate of interest on a judgment shall be at any rate expressed in the contract sued upon, or where there is no express contract rate, at 5% over the Federal Reserve discount rate including any surcharge, on the date of judgment, charged by the Federal Reserve Bank in the district encompassing the State of Delaware. Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve Discount Rate, including any surcharge thereon. (62 Del.Laws, C. 228)

Subsection (a) was later amended, effective May 13, 1980, to read:

"(a) Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon, and judgments entered after May 13, 1980, shall bear interest at the rate in the contract sued upon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time."

(62 Del.Laws C. 239)

Metropolitan also views the recovery of interest as a matter of damages and invokes the statutory rate under Section 2301(a) in effect at the time of default as that which controls. As previously indicated, I view the Mortgage Note and the Mortgage as integrated instruments which, read together, reflect the loan transaction. The question of post-default or pre-judgment interest is specifically addressed as part of the mortgagee's remedies in the mortgage instrument:

\* \* \* \* \* \*

"[W]ith interest at the rate stipulated in the Note to the date of default and thereafter at the maximum rate permitted by law, together with all other sums secured by this Mortgage, all costs of suit, interest at the maximum rate permitted by law, on any judgment obtained by Mortgagee from and after the date of any Sheriff's Sale of the Premises. . ."

\* \* \* \* \* \*

Monroe Park's argument that the contract rate of interest, or the former legal rate of six percent, should control in the face of a conceded default is not only contrary to the intentions of the parties as expressed in the written undertakings but also leads to the absurd result that, in a time of rising interest rates, the mortgagor suffers no detriment while in default and may, indeed, secure a benefit simply through delay. If post-default interest be considered damages, it must follow that the legal rate at time of default must prevail where permitted by the contract. *Jamaica Savings Bank v. Giamantonio*, N.Y.Supr., 59 Misc.2d 704, 300 N.Y.S.2d 218 (1969); *Cornett v. White Motor Corps.*, 190 Neb. 496, 209 N.W.2d 341 (1973).

The Bankruptcy Judge fixed the "time of default" as May 1, 1980, for the purpose of interest calculation. Since the fact of default was never seriously contested before the Bankruptcy Court, that date was not crucial to the issue of whether the total secured debt exceeded the property valuation. Even though interest has remained unpaid since May 1, 1980, the actual date of default is June 1, 1980—the date for the regular payment of principal as well as interest for the previous 30 days use of the entire principal. In short, there was no default until the June 1 payment was missed. I conclude, therefore, that the default here occurred on June 1, 1980, with the failure to make the monthly payment due on that date. When Metropolitan declared that non-payment an "Event of Default," which was its option under the mortgage, it accelerated the payment of the full balance of principal ($5,158,180.64), which, together with interest at the contract rate for the month of May and the shortages in the escrow account and late charges, results in the following calculation of the total obligation in default on June 1, 1980:

| | |
|---|---|
| Principal | $5,158,180.64 |
| Interest for May | 35,999.92 |
| Accrued Charges and Shortages | 30,861.24 |
| TOTAL | $5,225,041.80 |

Although Metropolitan, both before the Bankruptcy Court and in its mortgage foreclosure complaint, sought recovery of a post-default interest rate of 15 percent, it now claims entitlement to the rate of 18 percent (5 percent above the Federal Reserve discount rate) as authorized by § 2301(a), or because its debt is not subject to the usury statute under § 2301(c).[4] It is

---

**4.** "(c) Notwithstanding any other provision in this chapter to the contrary, there shall be no limitation on the rate of interest which may be

questionable whether Metropolitan may invoke a usury exemption under § 2301(c) since that provision did not become law until July 11, 1974, and was thus not in effect on the date the mortgage was executed. But it is unnecessary to decide that question or whether the fixing of June 1, 1980, as the date of default results in the application of a different interest test because of the statutory change which took place on May 13, 1980. Under either statute, Metropolitan's entitlement to charge more than 15 percent post-default interest is clear, but having made its election both in the Bankruptcy Court and here to claim only 15 percent, it is bound by that election in its pursuit of summary judgment on the record with all factual differences resolved in favor of Monroe Park. Section 2301(a), in either form, establishes a maximum, not a standard, rate of interest which the lender may pursue or not as it chooses.

## V

 Two final matters require determination. Monroe Park disputes Metropolitan's claim for five percent counsel fees. Even though the Bankruptcy Judge rejected Monroe Park's contention that the fee then claimed ($24,318.31) was excessive, this dispute should not stand in the way of summary judgment on the foreclosure claim. Monroe Park is entitled to an evidentiary hearing on the question even though a requested fee within the statutory limit is presumed reasonable and the burden on the defendant to demonstrate the contrary. *Rock v. Short*, Del.Supr., 336

A.2d 219 (1975). The presumption of reasonableness is particularly strong here in view of the extensive litigation which Metropolitan has been required to pursue both here and in the Bankruptcy Court. Moreover, in view of the fact that the mortgage is a non-recourse instrument and the meager prospect that a foreclosure sale will yield a price equal to the principal and interest charges which continue to accrue at $2,000 a day, the determination of counsel fees may prove to be an academic exercise.

Finally, Monroe Park requests that summary judgment not be entered at this time because of its pending efforts at reorganization under Federal law. Even if it be assumed that the Superior Court may stay a mortgage foreclosure proceeding in the face of a conceded default, a highly doubtful assumption, Monroe Park's recent unsuccessful effort before the District Court to secure a stay of the ruling of the Bankruptcy Court suggests the need for the foreclosure proceeding to be resolved. In view of the amount of debt involved and the length of time the default has continued, further delay in this action is not justified. Summary Judgment is accordingly granted in favor of Metropolitan. An appropriate order should be submitted.

legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence or any borrower."