Theodore KING and Aniello Madonna, as trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity and Job Training Trust Funds, Plaintiffs,

v.

JCS ENTERPRISES, and JCS Construction Co., Defendants.

No. CIV.A.CV–94–4604–WGY.

United States District Court, E.D. New York.

Oct. 3, 2003.

Anthony V. Barbiero, Anthony V. Barbiero, P.C., East Islip, NY, for JCS Construction Co., JCS Enterprises Inc., Defendants.

Michael Bauman, Friedman & Wolf, New York City, Mary M. Dickman, U.S. Attorney's Office, Eastern District of New York, Brooklyn, NY, Bruce S. Levine, Cohen, Weiss and Simon LLP, New York City, Amie Ravitz, Friedman & Wolf, New York City, Avram H. Schreiber, New York City, for Aniello Madonna, Theodore King, Plaintiffs.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

In light of the Court's findings and rulings at the conclusion of the non-jury trial conducted in this case from May 12–14, 2003, the motion to revise and reconsider made by JCS Enterprises, Inc. and JCS Construction Co. (collectively "JCS") is denied. The parties agree that JCS owes the Trustees of Local 282 Welfare, Pension, Annuity and Job Training Trust Fund (the "Funds") a sum of $108,108 in delinquent contributions plus interest, additional interest or liquidated damages,[2] attorneys fees, and costs as mandated by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2). 7/11/03 Barbiero Letter; 7/15/03 Bauman Letter. This Court adopts this agreement and enters judgment that JCS, Andrea Doreen, and Conroc, jointly and severally, and Micheal Loguidice and Dorothy Loguidice, individually, are liable to the Trustees for the amount of $108,108 plus interest, additional interest or liquidated damages, attorneys fees, and costs.[3]

The sole remaining issue before the Court is to determine the applicable interest rate, that is, how much interest JCS must pay. JCS contends that it is obligated to pay a six percent interest rate because the Funds' Trust Agreement states the applicable rate is the rate specified in Section 5–501 of the General Obligations Law of the State of New York. Defs.' Opp'n to Pls.' Interest at 1–4; Trial Ex. 4 at 18; N.Y. Gen. Oblig. Law § 5–501 (McKinney 2003). While the Trustees concede that the rate specified by the General

Obligations Law is six percent, they claim that the correct interest rate is sixteen percent. Pls.' Mem. in Support of Post-Trial Accounting at 8. They base this assertion on the fact that the General Obligations Law refers to Section 14(a) of the Banking Law which sets a maximum interest rate at sixteen percent. Id. at 9; N.Y. Banking Law § 14–a (McKinney 2003).

The central question for the Court is whether the Banking Law actually *prescribes* a rate of sixteen percent—which would then override the six percent rate depicted in the General Obligations Law—or whether it simply supplies a maximum interest rate that cannot be exceeded by a rate specified in the New York General Obligations Law. The Court turns first to the statutes themselves, then to their history, and finally to the case law.

The laws are unambiguous on their face. Section 14–a(1) of the Banking Law clearly provides a cap on the interest rate that can be designated by section 5–501 of the General Obligations Law. Subdivision one of the Banking Law reads: "The maximum rate of interest provided for in section 5–501 of the general obligations law shall be sixteen per centum per annum." N.Y. Banking Law § 14–a (McKinney 2003). Section 5–501 of the General Obligations Law, on the other hand, designates a six percent per annum interest rate "unless a different rate is *prescribed* in section fourteen-a of the banking law." N.Y. Gen. Oblig. Law § 5–501(1) (McKinney 2003) (emphasis added). The Banking Law makes clear that no such interest rate has been "prescribed"—it sets only a maximum. Moreover, a contrary reading

---

1. Of the District of Massachusetts, sitting by designation.

2. Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2)(C), provides that "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated dam-

ages ... not in excess of 20 percent" of unpaid contributions is also due.

3. *See* 5/16/2003 Trial Transcript at 556–57 for the Court's previous rulings regarding liability.

would render the interest rate prescribed in the General Obligations Law superfluous. In other words, if the Banking Law designates an interest rate and, therefore, always supercedes the General Obligations Law, the inclusion of an interest rate in the General Obligations Law would be meaningless. Thus, pursuant to the plain reading of the statute and following the statutory maxim against superfluity, the applicable rate is six percent.

The Trustees, however, argue against this plain reading. In support, they point to subdivision 5 of section 14–a. It reads:

> Whenever reference is made in this chapter or in any other law, contract or document to the rate of interest prescribed ... by the banking board or the superintendent pursuant to this section or any former section fourteen-a of this chapter, such reference shall be deemed a reference *to the rate of interest prescribed in subdivision one of this section.*

N.Y. Banking Law § 14–a(5) (McKinney 2003) (emphasis added). The Trustees contend this section makes clear that a rate of interest is "prescribed in subdivision one." While this argument is compelling, an alternate reading of this provision—and the one the Court adopts—is that by referring to a prescribed rate in subdivision one, the statute is referring to the "rate of interest provided for in Section 5–501 of the general obligations law ...." *Id.* § 14–a(1). In other words, just as the General Obligations Law directs the reader to look to the Banking Law to ensure that the correct rate is applied, the Banking Law directs the reader to look to the General Obligations Law. The two laws work together. One prescribes the legal

rate and the other "prescribes" the maximum.[4] In essence, the Banking Law works like a check on the General Obligations Law.

This reading comports with the history and purpose of the laws. In 1968, Section 5–501 was amended to refer to the Banking Law. Up until that point, "there was no question but that the legal rate of interest was 6% as provided in that statute." *Jamaica Sav. Bank v. Giacomantonio,* 59 Misc.2d 704, 300 N.Y.S.2d 218, 219 (N.Y.Sup.Ct.1969). The amendment, however, changed that. It provided that the rate of interest shall be six percent unless the Banking Law prescribed a different rate. *Id.; Gelco Builders and Burjay Constr. Corp. v. Simpson Factors Corp.,* 60 Misc.2d 492, 301 N.Y.S.2d 728, 732 (1969) (noting that the determination of the legal rate "has always been construed in terms of the maximum permitted in the 'usury statute' now General Obligations Law, Section 5–501" but that this law was amended to provide that the rate of interest prescribed by Section 14(a) of the banking law shall be the rate applied); *Rock Transport Properties Corp. v. Hartford Fire Ins. Co.,* 312 F.Supp. 341, 349 (S.D.N.Y.1970) (noting that the amendment provided that the "legal rate would be the rate prescribed by the banking board or if no rate had been so prescribed, six per centum per annum") (internal quotations omitted). This amendment to section 5–501 was made so that the legal interest rate would fluctuate with changes in the economy "so as to ensure the availability of credit at reasonable rates, while affording a competitive return to creditors." *Jamaica Sav. Bank,* 300 N.Y.S.2d at 220; *Rachlin & Co. v. Tra–Mar, Inc.,* 33 A.D.2d 370, 308

---

**4.** This is not to say that, if the Banking Law had stated in subdivision one that the legal rate of interest (as opposed to merely the maximum rate of interest) is a certain per-

centage, such a rate would not apply. On the contrary, the rate specified by the Banking Law would supplant the rate prescribed in the General Obligations Law.

N.Y.S.2d 153, 158 (N.Y.App.Div.1970) ("Chapter 349 of the Laws of 1968 also added section 14–a to the Banking Law and thereby it was declared to be the policy of the State that the rate of interest provided for in the aforesaid section 5–501 of the General Obligations Law shall be adjusted by the banking board in response to changed economic conditions in such manner as to insure the availability of credit at reasonable rates to the people of the state while affording a competitive return to persons extending such credit."). The reason that the General Obligations Law refers to the Banking Law is because the Banking Board is charged with determining the rate at which money is readily and safely invested.

> [A] creditor is entitled to a recovery of interest at the increased rate as just and reasonable indemnification for the loss of use of the principal sum during the period of default. Furthermore, if a creditor's recovery of interest was to be limited to a rate less than the prevailing statutory rate, debtors would be induced to delay payment as long as possible.

*Rachlin*, 308 N.Y.S.2d at 159. Here, the Banking Board chose simply to set a maximum interest rate understanding that the legal rate would thereby be set by the General Obligations Law. While a six percent interest rate may seem low—especially given the cases noted below that applied a 7.5% interest rate back in 1969 and 1970—interest rates nationally are quite low right now. Therefore, the application of a six percent rate of interest comports with current economic conditions.[5]

Further, as JCS aptly points out, had the draftsman wanted to specify the maximum allowable interest rate, he could have done so more clearly either by referring directly to the Banking Law or adopting the language used in a prior Trust Agreement. Defs.' Opp'n to Pls.' Interest at 2. The interest provision in the prior Trust Agreement states:

> [A]n Employer in default for five working days shall be obligated to pay interest at the highest legal per annum rate for the State of New York . . . .

*Id.* The interest provision in the Trust Agreement at issue states:

> [A]n Employer in default for five working days shall be obligated to pay interest at the rate specified in Section 5–501 of the General Obligations Law of the State of New York, as the same may be amended from time to time . . . .

Trial Exhibit 4 at 18. While it is unclear why this change was made to the current Trust Agreement, the change shows a departure from an intent to apply the maximum allowable interest rate.

Admittedly, there are a few New York cases and one case from this district that interpret the maximum interest rate set out in the Banking Law to usurp the six percent rate stated in the General Obligations Law. *See, e.g., Rachlin,* 308 N.Y.S.2d at 157–8 (noting that the Banking Law reads on section 5–501 of the General Obligations law and applying the maximum interest rate as the "legal rate" of interest in lieu of the six percent rate designated in the General Obligations Law); *Jamaica Sav. Bank* 300 N.Y.S.2d at 222 (concluding that the maximum interest rate found in the Banking Law constitutes the legal rate of interest for money judgments and applying it instead of the rate found in section 5–501); *Gelco Builders,* 301 N.Y.S.2d at 732–4 (concluding that the maximum

---

**5.** It should be noted that the Banking Board can amend section 14–a of the Banking Law quarterly to effectuate its purpose. *Rachlin,* 308 N.Y.S.2d at 158.

noted in the Banking Law—as opposed to the six per cent per annum prescribed in the General Obligations Law—should be applied); *Bourgal v. Robco Contracting Enterprises, LTD.*, No. 93–2664–ADS, slip op. at 8 n. 4 (E.D.N.Y. August 8, 1997), attached as Ex. B to Pls.' Mem. in Support of Post–Trial Accounting (applying the sixteen percent interest rate denoted in the Banking Law instead of the six percent interest rate found in the General Obligations Law); *Rock Transport*, 312 F.Supp. at 349 (labeling the maximum interest rates found in the Banking Laws of 1968 and 1969 as "the legal rate[s]" and applying those rates for interest accrued during those time periods). None of these cases, however, explained why an interest rate clearly labeled a "maximum" should be applied in lieu of the rate specified in the General Obligations Law. Moreover, there is no interpretation, of record, from the highest court of New York. As such, these decisions are not binding on this

Court nor does the Court find them persuasive. The plain meaning of the statutes cannot be denied.

Accordingly, judgment is entered in favor of the Trustees and against JSC Enterprises, JCS Construction Company, Andrea Doreen, and Conroc, jointly and severally, and Micheal Loguidice and Dorothy Loguidice, individually, in the following amounts: [6] (1) $108,108 in delinquent contributions; (2) $48,277 in interest pursuant to 29 U.S.C. § 1132(g)(2)(B); (3) $48,277 in additional interest pursuant 29 U.S.C. § 1132(g)(2)(C); and (4) $35.54 interest per diem effective July 1, 2003 until the date final judgment is entered. Additionally, the parties noted above are liable for reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D). The Trustees shall submit an application for attorney's fees and costs within 14 days after the entry of judgment.

SO ORDERED.

### APPENDIX A

| Year | Underpayment | # of years | Interest at 6% * | Additional Interest at 6% | Underpayment Combined with Interest |
|------|------|------|------|------|------|
| 1994 | $ 13,078 | 8.5 | $ 6,670 | $ 6,670 | $ 26,418 |
| 1995 | $ 75,746 | 7.5 | $34,086 | $34,086 | $143,918 |
| 1996 | $ 19,284 | 6.5 | $ 7,521 | $ 7,521 | $ 34,326 |
| TTL | $108,108 | | $48,277 | $48,277 | $204,662 |

| TTL Underpayment | Per Diem Interest at 6% ** | Additional Per Diem Interest 6% | Combined Interest Per Diem from 7/1/03 to Date of Entry of Judgment |
|------|------|------|------|
| 108,108 | $17.77 | $17.77 | $35.54 |

\* Interest calculated at rate of 6% from last day of each year through June 30, 2003.

**6.** Calculations of amounts due appear in Appendix A.

\* \* The per diem interest of $17.77, effective July 1, 2003 is calculated at 6% of the underpayment. The per diem interest at 6% plus the additional interest per diem at 6% totals $35.54 per diem.