■ MARINE MANAGEMENT, INC., Appellant, v SECO MANAGE-MENT, INC., Respondent, et al., Defendants.—In a mortgage foreclosure action, the plaintiff appeals (1) from so much of an order of the Supreme Court, Kings County (Williams, J.), dated April 17, 1989, as granted the motion of the defendant Seco Management, Inc., to limit the amount of interest payable on the judgment of foreclosure to the statutory rate of 9% per annum, and (2) from an order of the same court, dated June 20, 1989, which denied its motion for reargument.

Ordered that Justice Kooper has been substituted for former Justice Brown (see, 22 NYCRR 670.1 [c]); and it is further,

Ordered that the appeal from the order dated June 20, 1989, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated April 17, 1989, is affirmed insofar as appealed from; and it is further,

Ordered that the respondent is awarded one bill of costs.

In the case at bar, the defendant Seco Management, Inc. (hereinafter Seco), executed a mortgage in favor of the plaintiff's predecessor in interest in order to secure an indebtedness in the principal sum of $1,300,000. Pursuant to the terms of the mortgage, Seco was to pay interest at the "prime rate" plus 3½%, but in no event was the rate of interest to be lower than 13%. However, the mortgage separately provided that in the event of a default, Seco would pay interest "at the maximum rate permitted by law" from the date of the default until "the date of the actual receipt of payment * * * by the holder of this mortgage".

After Seco had defaulted in its mortgage payments, the plaintiff's predecessor in interest obtained a judgment of foreclosure against Seco dated February 11, 1988, which incorporated the computations of a court-appointed Referee. The Referee's report had established that the total sum due on the mortgage, including accrued interest calculated at the mortgage default rate of 25% per annum, through the date of computation December 31, 1987, was $1,811,874.98. The judgment further provided that interest should accrue on this sum from December 31, 1987, "pursuant to the terms of said mortgage".

While the parties to this appeal agree that the mortgage provided for an interest rate of 25% per annum upon default, they disagree as to the period of time during which that rate is applicable to the mortgage debt. Specifically, they disagree as to whether the 25% interest rate should apply to the

postjudgment period. The plaintiff contends that interest should accrue on the judgment at the rate of 25% per annum until the judgment is satisfied, whereas Seco maintains that such rate is only applicable until the date of entry of the judgment (*i.e.,* February 11, 1988), after which date interest should accrue at the statutory judgment rate of 9% per annum. The Supreme Court agreed with Seco and ordered that interest be computed on the judgment at the rate of 9% per annum. We agree with the court's determination.

Pursuant to CPLR 5003, "[e]very money judgment shall bear interest from the date of its entry", and, pursuant to CPLR 5004, such "[i]nterest shall be at the rate of nine per centum per annum". Although the statutory rate of interest is usually imposed after maturity of the contract, *i.e.,* the date of accrual of the cause of action (*see,* CPLR 5001, 5004; *see also, Williamson & Co. v Colby Engraving & Rubber Plate Corp.,* 98 Misc 2d 134, 135), where "the contract provides that interest shall be paid at a specified rate until the principal shall be paid, *the contract rate governs* until payment of the principal, or *until the contract is merged in a judgment" (Stull v Joseph Feld, Inc.,* 34 AD2d 655, 656; *see also, Astoria Fed. Sav. & Loan Assn. v Rambalakos,* 49 AD2d 715, 716). Subsequent to entry of judgment, therefore, the interest rate set forth in CPLR 5004 applies (*see, Williamson & Co. v Colby Engraving & Rubber Plate Corp., supra,* at 136), given that the contract rate of interest governs only "until the contract is merged in a judgment" *(Citibank v Liebowitz,* 110 AD2d 615; *see also, Bank Leumi Trust Co. v Ross Mgt.,* 101 AD2d 759; *Schwall v Bergstol,* 97 AD2d 540, 540-541).

Contrary to the position taken by the plaintiff, the language in the judgment of foreclosure to the effect that the defendant was to pay, *inter alia,* "the sum of $1,811,874.98 due on the mortgage, said amounts so reported due as aforesaid both together with interest thereon from December 31, 1987 (to which date computation was made in said report) pursuant to the terms of said mortgage", cannot be construed as altering the above rule that the statutory rate becomes applicable following entry of the judgment.

The judgment does not clearly and unequivocally provide for the imposition of interest at the rate of 25% through the date of satisfaction of the judgment debt. With respect to certain amounts, no interest rate is indicated in the judgment, and, as for the money due under the mortgage, the judgment merely stated that interest was to be imposed thereon from December 31, 1987, "pursuant to the terms of the mortgage".

This latter language is ambiguous to the extent that it fails to state through what *date* the interest was to accrue. At best, the language merely reflected the court's intent that the contract rate would apply until such time as the judgment was entered *(see, Citibank v Liebowitz,* 110 AD2d 615, *supra).*

Furthermore, there is nothing in the language of the mortgage which would suggest that the defendant intended to bind itself to paying a 25% interest rate following the entry of the judgment. The mortgage itself really contains two rates of interest—the original rate of "prime" plus 3½% and the penalty rate of 25% upon acceleration of the maturity date. Moreover, although the mortgage does provide that in the event of a default the higher rate of 25% would become applicable, the mortgage is completely silent as to whether such a rate would continue ad infinitum despite the ultimate merger of the contract into the judgment. The mortgage provisions must be read in the light of the above-established legal principles, and if it was the intent of the parties to depart from those principles, they should have stated it clearly and unequivocally.

The plaintiff's reliance upon the terms of a stipulation entered into by the parties is unavailing. That stipulation was reached in settlement of their dispute over the automatic stay of the foreclosure sale during the pendency of bankruptcy proceedings and would have operated to override the terms of the judgment had Seco procured a buyer for the property and been able to pay off the mortgage. By its very terms, the stipulation was to have no effect on the terms of the judgment in the event Seco failed to meet its obligations under the stipulation, in which case the judgment was to be executed and the foreclosure sale was to go forward. Since the stipulation effectively became a nullity when Seco did not secure its own buyer in lieu of having the property sold at a foreclosure auction, it cannot now be seriously contended that this document has any effect on the resolution of the question of the rate of interest to be applied *upon the judgment.*

In conclusion, in the absence of a clear, unambiguous, and unequivocal expression that Seco agreed to pay the highest interest rate allowed by law, namely, 25%, until the judgment was satisfied, we decline to depart from precedent establishing the statutory rate of interest of 9% as the proper rate to be applied to the judgment. Kooper, J. P., Sullivan and Balletta, JJ., concur.

Ritter, J., concurs in part and dissents in part and votes to

dismiss the appeal from the order dated June 20, 1989, and reverse the order dated April 17, 1989, insofar as appealed from, to deny the motion of the defendant Seco Management, Inc., and to remit the matter to the Supreme Court, Kings County, for a new determination of the amount to be awarded the plaintiff out of the proceeds of the foreclosure sale, with the following memorandum in which Rosenblatt, J., concurs: The question presented on this appeal is whether a mortgage providing for the payment of the maximum interest rate permitted by law (25%) "to the date of actual receipt of payment" should be given effect according to its terms. The Supreme Court answered the question in the negative and awarded the statutory rate of 9% interest once a judgment of foreclosure was entered. We would reverse the order dated April 17, 1989, and grant the plaintiff the benefit of the bargained-for interest rate holding that the defendant Seco Management, Inc. (hereinafter Seco) must pay 25% interest on the principal sum owed until the payment is received.

This case involves a mortgage agreement executed to secure payment of consolidated debts in the principal sum of $1,300,000. Interest ran at 3½% above the prime rate and upon default, Seco was obligated to pay interest at the increased rate of 25% on the unpaid principal debt computed from the date of default to the date of actual receipt of payment.

After Seco defaulted, the plaintiff's predecessor in interest obtained a judgment of foreclosure against Seco on February 11, 1988. The judgment confirmed the report of the court-appointed Referee that the total sum due on the mortgage, including accrued interest at the rate of 25% per annum through December 31, 1987, the date of computation, was $1,811,874.98. The judgment further provided that interest should accrue on this sum from December 31, 1987, "pursuant to the terms of said mortgage".

The foreclosure sale was stayed when Seco filed a petition in bankruptcy court. The plaintiff's predecessor moved for relief from the bankruptcy stay and a stipulation was executed on June 21, 1988, giving Seco time to find a buyer for a private sale of the mortgaged premises. In pertinent part, the stipulation provided that Seco would continue paying interest on the principal balance of $1,300,000 at the rate of 25% per annum "until the mortgage is fully paid". Seco was given a specified time period in which to produce a buyer willing to contract for a minimum price sufficient to pay the principal balance, "interest to date of sale at 25% per annum", plus all other sums accrued under the mortgage including foreclosure costs

and legal fees. In the event that Seco could not produce a buyer in accordance with the stipulation, the stay was to be automatically vacated and the property sold pursuant to the judgment. Seco was unable to produce a buyer, and on December 12, 1988, the property was sold at auction for a price in excess of $3,000,000.

Thereafter, Seco moved to stay distribution of the proceeds of the foreclosure sale, and to direct that the amounts to be distributed to the plaintiff be limited to the amounts set forth in the judgment, with interest thereon computed at the rate of 9% per annum, the legal rate of interest on a judgment (CPLR 5004). The plaintiff opposed the motion, contending that it was entitled to enforce its judgment and collect interest at the rate of 25% per annum. The Supreme Court agreed with Seco and awarded interest at the rate of 9% per annum.

In our view, the legislative determination that the statutory rate of interest applied to judgments should be 9% (CPLR 5004) does not preclude the parties from agreeing to a different rate of interest *(cf., O'Brien v Young,* 95 NY 428). When a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment *(see, Citibank v Liebowitz,* 110 AD2d 615; *O'Brien v Young, supra; Stull v Joseph Feld, Inc.,* 34 AD2d 655). Seco relies on *Citibank* in support of its contention that the contractual interest provision has been merged into the judgment and replaced by the statutory interest rate. Seco's reliance on *Citibank* is clearly misplaced.

The only issue presented in *Citibank* was whether the contract interest rate or the statutory interest rate should govern from the date of default up until the date of judgment. In holding that the contract rate should be applied, this court simply reaffirmed the relevant principles of law articulated by the Court of Appeals over a century ago in *O'Brien v Young (supra).* There was no claim in *Citibank* that the agreement was intended to survive and not merge into the judgment *(see also, Stull v Joseph Feld, Inc., supra).*

The case at bar is distinguishable because here, the parties clearly intended that the specified contract rate should survive the entry of judgment and continue until payment of the principal debt was actually received by the holder of the mortgage. Contrary to Seco's contention, merger does not occur when the parties intend otherwise, and when the judg-

ment incorporates the interest provisions of the mortgage. The parties' clear expression of intent in this case is evidenced further by the postjudgment stipulation in which Seco agreed to continue paying the mortgage rate of interest while it sought a private buyer to avoid the foreclosure sale of the mortgaged premises. Indeed, Seco's failure to seek modification of the judgment prior to the foreclosure sale bound it to the terms of the mortgage that were incorporated by reference into the judgment *(cf., Rainbow v Swisher,* 72 NY2d 106, 110).

If Seco were permitted to avoid its contractual obligation, there would be an incentive to allow the matter to proceed to judgment, and to prolong the satisfaction of the judgment. The interest rate fixed by the mortgage is considerably higher than the 9% rate applied to judgments. The resolution of disputes without resort to the courts is to be encouraged. The mortgage was drafted so as to accomplish this by increasing the interest rate upon default. This served to encourage prompt settlement of the indebtedness. Were the debtor to be permitted to replace the higher rate with the legal rate of 9%, it would encourage litigation and tactics designed to delay enforcement of the judgment. Accordingly, we conclude that the plaintiff was entitled to the benefit of the bargained-for 25% interest rate on the principal amount of $1,300,000 from the date of the Referee's computation, December 31, 1987, to the date that principal amount was paid. The matter should be remitted to the Supreme Court for a new determination of the amount to be awarded to the plaintiff out of the proceeds of the foreclosure sale.