CARDAMONE, Circuit Judge.
This appeal concerns the calculation of interest. Crucial to its resolution in this case is fixing when the event takes place that separates pre-judgment from post-judgment time periods. The demarcation between the two periods occurs when a meaningful judgment is entered. The time when an event happens is important ordinarily because of the consequences that flow from it. When a meaningful judgment was entered has significance on this appeal for the same reason, i.e., because that is when post-judgment interest begins to run and pre-judgment interest ceases to apply. Unlike the time when a train departs its station or when the sun rises in the East — events that may be set out in a time-table or a schedule — the entry of a meaningful judgment requires a court to analyze the circumstances surrounding a judgment’s entry in order to reach a legal conclusion supported by the evidence that establishes the time when such entry meaningfully occurs. We undertake that task in this opinion.
The appellants on this appeal — Westinghouse Credit Corporation and Westinghouse Electric Corporation — are now both part of Viacom, Inc. We refer to appellants collectively as Westinghouse. It appeals from an order of the United States District Court for the Southern District of New York (Stanton, J.) dated March 13, 2003. That order confirmed an arbitration award in Westinghouse’s favor, but calculated interest on that award based on the statutory post-judgment interest rate, and applied that rate from the date of an earlier district court judgment that had been vacated on a prior appeal to this Court. Westinghouse contends the district court should have applied a higher interest rate during the period. Because we agree with this contention, we vacate the award and remand with instructions to the district court to amend its judgment so as to add to the award the correct amount of interest.
BACKGROUND
Most of the underlying facts are set out in detail on the earlier appeal in Westing *99 house Credit Corp. v. D’Urso, 278 F.3d 138 (2d Cir.2002). For purposes of the present appeal, it is sufficient to recite the following: Florence B. D’Urso (Seller) sold all of the shares of Durso Supermarkets, Inc. (which owned 22 supermarkets) in 1989 for $44 million to T.F. Acquisition Corp. (Buyer). Id. at 141-42. Buyer obtained financing to make this purchase of Durso Supermarkets from Westinghouse, and paid the purchase price with a combination of cash and a note and mortgage. The contract covering this transaction called for post-closing adjustments to the purchase price, and part of the cash payment was placed in escrow to cover these adjustments. Id. The agreement further provided that disputes over post-closing price adjustments would be resolved through arbitration and directed that any resulting award was to be paid within ten days. Id.
In addition, the agreement contained specific provisions for interest calculations, the subject at the heart of this appeal, in the event that such an award was not paid on time. Section 2.04(c) of the agreement stated
If and in the event payment ... is not made on the due date, interest shall be added to the Amount Due, from the date payment was due to the date payment is made, at a rate computed by adding five percent (5%) per annum to the Prime Rate.
The parties agree that the prime rate specified under this section is a fixed yearly rate of 10.5 percent, and therefore the interest to be added to the amount due was 15.5 percent per year simple interest (5 percent plus 10.5 percent prime rate).
After the transaction closed, Ms. D’Urso as the Seller calculated the price adjustments and determined that the Buyer had paid her more than was owed under their contract. Accordingly, she returned to Buyer a check for $190,302.70. Id. at 143. Buyer contended that it was owed even more money for the closing adjustments. But Buyer had defaulted on payments owed Seller and had filed for bankruptcy before the closing adjustments dispute could be resolved. Because Westinghouse was Buyer’s secured creditor, the bankruptcy court permitted it to prosecute Buyer’s post-closing price adjustment claims on Buyer’s behalf. Seller demanded that these claims be arbitrated, as called for in the contract, and she successfully moved the district court to withdraw the reference of this claim to the bankruptcy court and instead order arbitration. Id.
In 1998 following arbitration, the arbitrator awarded Westinghouse $2.3 million on the post-closing price adjustment claim it was prosecuting as a secured creditor of the Buyer. Id. at 144. In the meantime, Seller had obtained two judgments' against Buyer based on other claims Ms. D’Urso had arising out of the sale of Durso Supermarkets. Id. at 143. Seller sought to use these two judgments as a recoupment or setoff to satisfy the arbitration award in favor of Westinghouse. Id. at 144. When Westinghouse petitioned the district court to confirm its arbitration award and to direct that the parties’ escrow account be used to satisfy it, the district court confirmed the award, but agreed with Seller’s setoff argument. It therefore directed the escrow agents to pay the entire escrow fund to Seller rather than to Buyer. Id. That decision, which formed the basis of a judgment dated June 2, 1999 was the subject of the previous appeal in this Court. The issue we addressed on that appeal was whether Seller was entitled to satisfy and extinguish the arbitration award by re-coupment or setoff against Seller’s other-judgments. Id. We held that Seller (Ms. D’Urso) was not so entitled. Thus, we *100 vacated the judgment and remanded the case to the district court. Id. at 150.
On remand, the district court ruled on the only contested issue remaining, which was the calculation of interest. In an order dated March 13, 2003, it held that interest should be calculated using the purchase agreement rate of 15.5 percent per year from the day after the arbitration award was due — August 1, 1998 — up until the day on which the district court had rendered its earlier judgment confirming the award — June 2, 1999, a period of ten months. It further decided that interest should be calculated at the post-judgment interest rate dictated by 28 U.S.C. § 1961 (a lower rate than 15.5 percent) between June 2, 1999 (the date of the district court’s earlier judgment) and the date of payment. The district court then rendered a new judgment in which it confirmed Westinghouse’s arbitration award and directed the escrow agents to pay that amount, plus the specified interest to Westinghouse. This new judgment was dated March 28, 2003, and payment of it was effected on the same day.
DISCUSSION
Section 1961 of Title 28 provides a uniform rate at which post-judgment interest is to accrue on civil money judgments recovered in federal district court. It is undisputed that if the district court was correct in applying the § 1961 rate, and if it was correct in applying it from June 2, 1999, then it was also correct that the precise rate mandated by § 1961 was 4.879 percent per year (computed daily and compounded annually). But Westinghouse contends that the § 1961 rate should not have applied because the parties had agreed in the purchase agreement to a higher yearly rate of 15.5 percent interest. Alternatively, Westinghouse urges that the district court should not have applied the § 1961 rate commencing pn June 2, 1999 because judgment had not been meaningfully ascertained at that time.
I Standard of Review
We have not had occasion to establish the standard under which a district court’s award of post-judgment interest under § 1961 is reviewed. That standard we now hold is de novo. We recognize that interest awards are ordinarily said to be subject to an abuse of discretion standard. But such language appears only in cases where the statute commits those awards to the district court’s discretion. See, e.g., ■ Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613 (2d Cir.1994) (reviewing pre-judgment interest awarded under federal law). In contrast, we have not limited review to the abuse of discretion standard in cases where the governing law made an award of interest mandatory. See, e.g., Indu Craft, Inc. v. Bank of Baroda, 87 F.3d 614, 617 (2d Cir.1996) (reviewing pre-judgment interest awarded under New York law).
There is no question but that the post-judgment interest awarded in this case was mandatory under § 1961. That section states: “Interest shall be allowed on any money judgment in a civil case recovered in a district court.” 28 U.S.C. § 1961; see Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir.1996) (stating that interest awarded under § 1961 is mandatory; Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int’l, Ltd., 888 F.2d 260, 269 (2d Cir.1989)) (same). Further, our review of this award hinges on statutory interpretation. These factors militate in favor of de novo review. Cf. BP Exploration & Oil Co. v. Maint. Servs., Inc., 313 F.3d 936, 947 (6th Cir.2002) (reviewing post-judgment interest award de novo because it involved interpretation of § 1961); Citicorp Real Estate, Inc. v. Smith, 155 F.3d *101 1097, 1107 (9th Cir.1998) (same). In addition to reviewing the trial court’s decision on post-judgment interest, we are required to review the district court’s construction of the terms of the purchase agreement, and that construction is also subject to de novo review. See, e.g., Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 198 (2d Cir.2003).
II Purchase Agreement Interest Rate Versus Statutory Interest Rate
Westinghouse’s primary contention is that the district court should not have applied § 1961 at all. Instead, it maintains, the 15.5 percent yearly interest rate specified in the parties’ purchase agreement should have been used. Although Westinghouse was not a signatory to the purchase agreement, it is standing in Buyer’s shoes in this litigation. According to Westinghouse, parties are free to fix post-judgment interest at a rate other than that specified in § 1961, and it contends the parties did so here.
A. Post-Judgment Interest Set By Contract
We agree that parties may by contract set a post-judgment rate at which interest shall be payable. Yet we are unable to conclude that the parties did so in this case. While we have never addressed the question of whether parties may “contract out” of § 1961, the Fifth and Seventh Circuits have squarely held that they may. See Cent. States, Southeast & Southwest Areas Pension Fund v. Bomar Nat’l, Inc., 253 F.3d 1011, 1020 (7th Cir.2001) (“It is well established that parties can agree to an interest rate other than the standard one contained in 28 U.S.C. § 1961.”); ITT Diversified Credit Corp. v. Lift & Equip. Serv., Inc., 816 F.2d 1013, 1018 (5th Cir.1987) (“While 28 U.S.C. § 1961 provides a standard rate of post-judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws.”); see also Hymel v. UNC, Inc., 994 F.2d 260, 265-66 (5th Cir.1993) (stating the same in dicta). We note that two district courts in other circuits recently took issue with the authority on which the above holdings relied, but neither court disputed the basic premise that parties may by contract override the statutory interest rate set by § 1961. See BP Prods. N. Am., Inc. v. Youssef, 296 F.Supp.2d 1351, 1354-55 & n. 4 (M.D.Fla. 2004); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 244 F.Supp.2d 1250, 1272-75 (D.Kan.2003).
Similar to our sister circuits, we see nothing in § 1961 to prevent parties from setting their own post-judgment interest rates through private agreements, so long as those rates do not violate state usury or other applicable laws. We say this because the text of § 1961 is silent on the point, neither expressly permitting nor ruling out deviations by private agreement. While the section employs mandatory language, we believe this is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, see, e.g., Carte Blanche, 888 F.2d at 269-70, not at limiting the ability of private parties to set their own rates through contract. See Horizon Holdings, 244 F.Supp.2d at 1275.
Post-judgment interest serves as a means to “compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.” Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Congress’ last major amendment to § 1961 was designed to keep post-judgment interest rates high enough so as to *102 deter losing defendants from having an economic incentive to pursue frivolous appeals. See id. at 839, 110 S.Ct. 1570; S.Rep. No. 97-275, at 11, 30 (1981), reprinted in 1982 U.S.C.C.A.N. 11, 21, 40. Allowing parties to strike their own bargains with respect to post-judgment interest furthers this goal. The parties are' usually in the best position to determine the amount of compensation appropriate in case of delayed satisfaction. To the extent they agree on a rate higher than that provided by § 1961, they are simply augmenting what Congress has already said and further discouraging frivolous appeals. To the extent they agree on a lower rate, the successful plaintiff has essentially waived part of the benefit that the statute was intended to confer, and beneficiaries of a statutory provision generally may to dp this, absent congressional language to the contrary. See United States v. Mezzanatto, 513 U.S. 196, 200-01, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995). Although we ultimately need not decide the issue on the. particular facts of this case, we are thus of the view that the parties were free to establish a post-judgment interest rate by contract if they wished to do so.
B. Limits on Contracts Setting Post-Judgment Interest
Section 1961, of course, is not the only potential limit on private agreements governing post-judgment interest. Such agreements must also comport with applicable laws governing contract and usury in general. Most fundamentally, such contracts must actually indicate the parties’ intent to deviate from § 1961. It is at this juncture where our views part from those that Westinghouse urges on us.
It has been established that the purchase agreement in this case is governed by New York law. See Westinghouse, 278 F.3d at 146 & n. 3. The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives. See Marine Mgmt., Inc. v. Seco Mgmt, Inc., 176 A.D.2d 252, 574 N.Y.S.2d 207, 208 (2d Dept.1991), aff'd, 80 N.Y.2d 886, 587 N.Y.S.2d 900, 600 N.E.2d 627 (1992); Carte Blanche, 888 F.2d at 269. Under New York law, contract language stating that a particular interest rate will accrue on a debt until the date of payment is interpreted as applying to the debt itself, and not to any .judgment into which the debt is merged. See Marine Mgmt., 574 N.Y.S.2d at 208-09. If parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through “clear, unambiguous and unequivocal” language. Banque Nationale de Paris v. 1567 Broadway Ownership Assocs., 248 A.D.2d 154, 669 N.Y.S.2d 568, 569 (1st Dept.1998); see Marine Mgmt., 574 N.Y.S.2d at 209.
The parties in the case at bar did not do this. They agreed that a 15.5 percent interest rate would be added to any arbitration award “from the date payment was due to the date payment is made.” The parties failed to state that this rate would apply to judgments rendered on that award. New York law treats this language therefore as applying only to the contract debt, and not to the judgment into which that debt is merged. Consequently, even though we believe the parties could have contracted out of the § 1961 interest rate, it is quite evident that they neglected to do so.
Ill Timing of Statutory Rate
Westinghouse’s alternative contention is that regardless of the parties’ intent to contract around § 1961, post-judgment interest could not begin running until March *103 28, 2003, because that is when judgment was first meaningfully ascertained. Until that date, Westinghouse asserts, the purchase agreement continued to dictate that pre-judgment interest at the rate of 15.5 percent continued to apply. The Seller D’Urso does not dispute that the purchase agreement dictates the rate of pre-judgment interest, but she declares that judgment was meaningfully ascertained on June 2,1999, nearly four years earlier than the March 2003 date Westinghouse selected. She also points out that Westinghouse never raised this issue before the district court. What is critical about the date judgment was meaningfully ascertained is that this is the date that separates for the computation of interest the pre-judgment and post-judgment periods.
In general we refrain from passing on issues not raised below, Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); Burnette v. Carothers, 192 F.3d 52, 58 (2d Cir.1999). But we nonetheless retain broad discretion to do so in certain circumstances because the rule of refraining is not one that limits appellate jurisdiction. Lo Duca v. United States, 93 F.3d 1100, 1104 (2d Cir.1996). One such circumstance where we may rule on issues not raised in the district court is when the issues are solely legal ones not requiring additional factfinding. See Baker v. Dorfman, 239 F.3d 415, 420-21 (2d Cir.2000). Such is the case here.
As a starting point, we agree with the parties that neither Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), nor Federal Rule of Appellate Procedure 37(b) would have limited the district court’s power to award post-judgment interest from June 2, 1999 if such an award had been otherwise justified. Rule 37(b) requires that when a Court of Appeals “modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest.” Rule 37(b) serves as.a reminder of the Briggs rule which holds that if the mandate does not contain such instructions, the district court is powerless to award interest during the period between its original judgment and the judgment it enters on remand, since doing so would deviate from the mandate it has been given. See Briggs, 334 U.S. at 306, 68 S.Ct. 1039; Fed. R.App. P. 37 advisory committee’s note. By their terms Rule 37(b) and the underlying Briggs limitation on district court power apply only when the mandate directs the district court to enter a money judgment.
We do not infer a different result from the recent decision in Tronzo v. Biomet, Inc., 318 F.3d 1378 (Fed.Cir.2003). In Tronzo the Federal Circuit held that a mandate directed the entry of a money judgment (and Rule 37(b) therefore applied) even though the mandate lacked the ■word “remanded.” See id. at 1380. The court reasoned that “all appellate judgments are returned to the district court for entry and implementation.” Id. While we agree that the word remanded is not needed to trigger Rule 37(b) and Briggs, we believe there must be at least some indication that the mandate is directing entry of a particular money judgment. In the absence of such an indication, the district court should not be barred from awarding interest on its own, since doing so would not deviate from the mandate.
Rule 37(b) and Briggs did not apply to the instant case because this Court’s mandate did not direct the district court to enter a money judgment. Instead, the mandate simply vacated the district court’s June 2, 1999 judgment, and remanded “for further proceedings in accordance with the opinion of this Court.” The opinion stated *104 that it was remanding “for further proceedings.” Westinghouse, 278 F.3d at 142, 144, 150. While it is clear that the effect of the mandate and opinion was to ensure that the district court would ultimately enter a money judgment in favor of Westinghouse, neither document suggested what the amount of the judgment should be or that the judgment could be entered by the district court without further proceedings. To the contrary, the mandate expressly stated that “further proceedings” were required. Accordingly, the district court did not deviate from or enlarge the mandate by awarding interest.
However, it did deviate from our rule on when post-judgment interest begins accruing in cases involving multiple judgments. In such cases, post-judgment interest should be calculated from whenever judgment was first ascertained in a meaningful way. Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 178 (2d Cir.2002); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir.1998). Where the judgment on damages finds no support in the evidence, it may not be said that damages have been ascertained in a meaningful way. Kaiser Aluminum, 494 U.S. at 836, 110 S.Ct. 1570. Where a judgment is vacated “because it lacks a legal basis or requires further factual development, the vacated award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand.” Lewis, 99 F.3d at 545-46.
The June 2, 1999 judgment in this case was not ascertained in a meaningful way because it awarded no money to Westinghouse, and because it was vacated on appeal. While the trial court ascertained the amount of the arbitration award, such was just the first step in determining the amount to award in the judgment itself. By applying a recoupment or setoff, the court erroneously concluded the judgment should include no monetary damages. Cf. Carte Blanche, 888 F.2d at 267-70 (in which the judgment in question not only confirmed an arbitration award but also included correct damages based on that award). What the district court did is analogous to a judgment that correctly determines liability, but errs in applying the appropriate method to calculate damages. We have previously held that such a judgment was not ascertained in a meaningful way for the purposes of post-judgment interest. See Vt. Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 452 (2d Cir.1998).
The situation here is different from one where judgment for plaintiff is entered on a jury verdict, but defendant’s post-trial motion for judgment as a matter of law (JMOL) is granted. In such a case, if an appellate court later reverses defendant’s JMOL, it may be proper to calculate post-judgment interest from the original judgment because the appellate court’s reversal “does not change the fact that the [original] judgment was ascertained in a meaningful sense.” Indu Craft, 87 F.3d at 620. In the instant case, on the other hand, there is no original judgment left standing after the vacatur on appeal.
The first meaningfully ascertained judgment in this case is the one dated March 28, 2003. This date is important to Westinghouse because, as noted earlier, until that date the higher 15.5 percent pre-judgment interest rate governed. Hence, prejudgment interest should have therefore been awarded until that judgment was entered and post-judgment interest should have been awarded thereafter. Of course since the judgment was actually paid on March 28, 2003, there is no need to award any post-judgment interest.
CONCLUSION
For the foregoing reasons, we vacate the district court’s judgment to the extent that *105 it erroneously calculated post-judgment interest starting on June 2, 1999. We remand with instructions that the March 28, 2003 judgment be amended by awarding Westinghouse interest on its arbitration award from June 2, 1999 until March 28, 2003 at a rate of 15.5 percent per year (simple interest), rather than at the statutory rate of five percent.
Vacated and remanded.